# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Waugh v. Morgan Stanley & Co.*, 2012 IL App (1st) 102653

---

| | |
|---|---|
| Appellate Court Caption | LISA WAUGH, as Surviving Spouse of Michael Patrick Waugh, Deceased, and as Special Administrator of the Estate of Michael Patrick Waugh, and as Mother and Natural Guardian of Joseph Waugh, Jordan Waugh and Jameson Waugh, Minor Children, Plaintiff, v. MORGAN STANLEY AND COMPANY, INCORPORATED, and DONNA TUREK, Independent Administrator of the Estate of Mark Turek, Deceased, Defendants (DONNA TUREK, Independent Administrator of the Estate of Mark Turek, Deceased; Morgan Stanley and Company, Inc., *et al.*, Counterplaintiff-Appellant and Cross-Appellee; Randall D. Repke, Independent Executor of the Estate of Kenneth Knudson, Deceased; H.K. Golden Eagle, Inc.; Sybaris Clubs International, Inc.; Galt Airport, L.L.C.; and Recurrent Training Center, Inc.; Arr-ow 2, Inc., d/b/a Glass Simulator Center; Gene Littlefield Advanced Simulator Systems, d/b/a Glass Simulator Center; Howard D. Levinson; and Hark Corporation, Counterdefendants-Appellees and Cross-Appellants).–JENNIFER E. GARLAND, Independent Administrator of the Estate of Scott A. Garland, Deceased, Plaintiff, v. T.W. SMITH ENGINE COMPANY, INC., a Corporation, *et al.*, Defendants (Howard Levinson and Hark Corporation, Defendants-Appellees; Randall Repke, as Independent Executor of the Estate of Kenneth Knudson, Deceased, Counterplaintiff and Cross-Appellant; Donna Turek, Independent Administrator of the Estate of Mark Turek; Morgan Stanley and Company, Incorporated; Morgan Stanley DW, Incorporated; Counterdefendants, Recurrent Training Center, Inc.; Arr-ow 2, Inc., d/b/a Glass Simulator Center; and Gene Littlefield Advanced Simulator Systems, d/b/a Glass Simulator Center, Counterdefendants and Cross-Appellees).–LISA A. WAUGH, as Surviving Spouse of Michael Patrick Waugh, Deceased, and as Special Administrator of the Estate of Michael Patrick Waugh, and as Mother and Natural Guardian of Joseph Waugh, Jordan Waugh, and Jameson Waugh, |

Minor Children, Plaintiff, v. MORGAN STANLEY AND COMPANY, INCORPORATED, and THE ESTATE OF MARK TUREK, Defendants (Morgan Stanley and Company, Incorporated, Third-Party Plaintiff-Appellant; Howard D. Levinson and Hark Corporation, *et al.*, Third-Party Defendants and Appellees).–LISA A. WAUGH, as Surviving Spouse of Michael Patrick Waugh, Deceased, and as Special Administrator of the Estate of Michael Patrick Waugh, and as Mother and Natural Guardian of Joseph Waugh, Jordan Waugh, and Jameson Waugh, Minor Children, Plaintiff, v. MORGAN STANLEY AND COMPANY, INCORPORATED, and THE ESTATE OF MARK TUREK, Defendants (Morgan Stanley and Company, Inc.; Third-Party Plaintiff-Appellant; Howard D. Levinson and Hark Corporation, *et al.*, Third-Party Defendants-Appellees).

| | |
|---|---|
| District & No. | First District, Fourth Division<br>Docket Nos. 1-10-2653, 1-10-2662, 1-10-2885, 1-10-3410 cons. |
| Filed | March 1, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In multiple actions arising from the fatal crash of a small airplane, the appellate court affirmed the trial court's finding that all of the claims pertaining to the teaching, training and instruction of the pilot of the plane prior to the accident related to the quality of his instruction provided to the pilot and constituted claims of educational malpractice that were not recognized in Illinois and were barred as a matter of law. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 06-L-1410, 06-L-5121, 06-L-6532, 08-L-613, 10-L-4345 cons.; the Hon. Irwin J. Solganick, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael G. McQuillen, Paula L. Wegman, Austin W. Bartlett, and Steven L. Boldt, all of Adler Murphy & McQuillen LLP, and Edward J. Matusheck III and Bridget G. Longoria, both of Matushek, Nilles & Sinars, LLC, both of Chicago, for appellants Morgan Stanley & Co. and Estate of Mark Turek.

Clifford Law Offices, of Chicago (Richard F. Burke, Jr., and Robert P. Sheridan, of counsel), for appellant Jennifer Garland.

William F. DeYoung, Loretto M. Kennedy, and Sean M. Conaghan, all of Chuhak & Tecson, PC, and Norman J. Lerum, of Norman J. Lerum, PC, both of Chicago, for appellees Howard D. Levinson and Hark Corporation.

Charles R. Barnett III, of Barnett Law Offices, PC, of Lake in the Hills, for appellee Recurrent Training Center, Inc.

Panel

JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justice Sterba concurred in the judgment and opinion.
Justice Pucinski dissented, with opinion.

## OPINION

¶ 1    The instant cause involves multiple actions stemming from claims brought following a fatal airplane crash. Appellants Morgan Stanley and Company, the estate of Scott Garland, and the estate of Mark Turek appeal from orders of the trial court granting partial summary judgment to appellees Howard Levinson and Hark Corporation on all claims alleging educational malpractice. Appellants contend that the trial court erred by characterizing their claim as sounding in the tort of educational malpractice rather than ordinary negligence. Counterdefendant-appellee Recurrent Training Center, Inc., challenges this court's jurisdiction of this cause and asks that we dismiss the cross-appeal filed against it as untimely. For the following reasons, we affirm.

¶ 2                                    BACKGROUND
¶ 3    These consolidated appeals stem from a fatal plane crash. On January 30, 2006, Mark

Turek, the pilot in command of a Cessna 421B aircraft,[1] and three passengers, Kenneth Knudson, Scott Garland, and Michael Waugh, were en route from a Kansas airport to the Palwaukee Municipal Airport in Wheeling, Illinois, following a business trip. As Turek piloted the Cessna 421B for landing at the airport, the aircraft crashed, killing all four occupants on board.

¶ 4    Prior to the occurrence, Turek received flight simulator training from defendant Arr-ow II, Inc., flight instruction from defendant Recurrent Training Center (Recurrent), and a five-hour flight observation and instruction from defendant Levinson. Multiple wrongful death and contribution actions were commenced subsequent to the incident, and those actions were later consolidated for discovery at the circuit court. The Waugh, Knudson, and Garland plaintiffs all filed complaints against multiple defendants, including Morgan Stanley and Turek. Defendant/third-party plaintiff Morgan Stanley filed third-party complaints and counterclaims for contribution in the Waugh, Knudson, and Garland actions against defendants/third-party defendants Levinson and Hark. Defendants/counterplaintiffs Levinson and Hark filed a counterclaim for contribution against Arr-ow, alleging negligent instruction.

¶ 5    In their complaints, the plaintiffs alleged, in pertinent part, that their decedents' deaths were proximately caused by the negligence of Turek and Morgan Stanley, as well as other parties. Allegations included that Morgan Stanley's employee, Turek, piloted the aircraft in a negligent manner and that Morgan Stanley was vicariously liable for Turek's negligence. In its third-party complaint and counterclaims for contribution, Morgan Stanley, along with other parties, alleged that Arr-ow and Recurrent (flight schools) negligently provided flight training to Turek, which contributed to the crash.

¶ 6    Morgan Stanley and the other parties also alleged that Levinson, who provided Turek with in-flight instruction on the accident aircraft, negligently failed to adequately and properly train and instruct Turek as to how to operate the aircraft. They alleged that Hark was vicariously liable for Levinson's negligent training.[2] Defendant Turek also filed counterclaims for contribution against Levinson and Hark.

---

[1]The parties refer to Turek as the pilot in command of the aircraft. However, appellants acknowledge in a footnote: "The underlying wrongful death litigation arising out of this accident remains pending. The issue regarding which of the two front seat pilots was flying prior to or at the time of the accident remains hotly contested. The NTSB's factual investigation found that no determination has been made as to which front seat occupant was manipulating the controls prior to or at the time of the accident and Morgan Stanley does not waive its right to assert that Turek was not manipulating the controls. In the event, however, that the jury ultimately finds that Turek was manipulating the controls prior to or at the time of the accident, then Levinson's negligent training is a critical liability issue for the jury's determination." For purposes of clarity, we, like the parties on appeal, refer to Turek as the pilot in command.

[2]The accident aircraft was owned by HK Golden Eagle, Inc. HK Golden Eagle was comprised of 50% Hark Corporation and 50% decedent Knudson. Levinson and his wife were the sole shareholders of Hark Corporation. Accordingly, Knudson and Levinson essentially co-owned the accident aircraft.

¶ 7    Prior to January 2006, Turek was fully licensed by the Federal Aviation Administration (FAA) to fly twin-engine aircraft, including the accident aircraft. From January 6 through January 9, 2006, Turek completed a flight training course with Recurrent to transition from his Baron B55 twin-engine plane to the Cessna 421B. Previous to taking this course, Turek had 1,284.05 hours of total flight experience, including over 1,050 hours in multi-engine aircraft. Turek had piloted a Cessna 421B aircraft for over 29 hours. At the time he completed the Recurrent course, Turek had been an FAA-licensed pilot for nine years. There is no argument made that Turek was not properly qualified to pilot the subject aircraft under FAA regulations.

¶ 8    The Recurrent program, course materials, and training that Turek completed complied with FAA regulations and was FAA certified. The twin Cessna flight training device used by Turek during his training session at Recurrent was FAA certified, qualified, and calibrated, and routinely inspected by the FAA.

¶ 9    Recurrent students are experienced pilots who have obtained their FAA pilot's license and ratings. Recurrent flight instructor Kyle Lyons testified at deposition that Turek, when completing his training coursework at Recurrent, demonstrated through performance and testing that he was fully proficient, competent, and prepared to fly. He also demonstrated that he was aware of the specifics of a Cessna 421B aircraft. Specifically, Turek completed a Cessna 421B workbook which was reviewed by a Recurrent instructor to verify that Turek was familiar with all information specific to the Cessna 421B. Turek was provided with information on Cessna 421B power settings, speeds, and other procedures for operating in the landing phase of flight. Additionally, Turek's one-on-one training included operations and performance training specific to the Cessna 421B. There was no indication during the Recurrent coursework and evaluation that Turek had any difficulties with regard to descending, turning, speed, or otherwise controlling the aircraft in the airport environment. Turek was taught Cessna 421B stall speeds, proper engine operation, and fuel management.

¶ 10    In 2005, Turek successfully completed 33 hours of recurrent twin-engine instrument proficiency training with Eugene Littlefield, his instructor at Arr-ow. According to Littlefield's deposition testimony, Turek was already a qualified and proficient twin-engine pilot at that time. In Littlefield's opinion, Turek was always in control of the airplane, displayed good techniques, procedures, and cockpit management, and was a very proficient pilot. Littlefield opined that Turek was a fully trained, safe, competent, and qualified multi-engine pilot.

¶ 11    After completing training at both Arr-ow and Recurrent, Turek flew the subject aircraft for an additional five hours in January 2006 under the observation of Levinson, a partial owner of Hark, which had an ownership interest in HK Golden Eagle. Levinson testified at deposition that the purpose of the observation was for Levinson to observe Turek fly the subject aircraft and to provide the required hours to satisfy his insurance company requirements. At the time of the observation flight, Levinson was a certified flight instructor with an FAA rating as an airline transport pilot. Levinson was certified and rated for single-engine, multi-engine, and instrument flight, as well as an instructor for aircraft, instrument flight, and multi-engine aircraft. Levinson testified at deposition that Turek was a qualified pilot with many hours of flying experience in a Cessna 421B. The accident aircraft crashed

at night while in a landing traffic pattern to land at Palwaukee airport. Much of Turek's in-flight training by Levinson in the accident aircraft was flying in the landing traffic pattern in the same location as the crash site.

¶ 12    Following the crash, Levinson, Recurrent, and Arr-ow all became defendants in consolidated actions based upon their education/training of Turek.

¶ 13    Recurrent filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2008)) regarding the preflight educational malpractice claims, arguing that, consistent with the majority of jurisdictions, Illinois has not and would not recognize the tort of educational malpractice.

¶ 14    Arr-ow also filed a motion for summary judgment pursuant to section 2-1005 of the Code, arguing that Turek's negligence claim sounds in the tort of educational malpractice, which is not a recognized cause of action in Illinois.

¶ 15    Levinson and Hark filed a separate motion for partial summary judgment pursuant to section 2-1005 of the Code, alleging that there was no genuine issue as to any material fact regarding Garland's claims of educational malpractice as asserted in Garland's sixth amended complaint. Specifically, Levinson and Hark adopted the arguments made by Recurrent and Arr-ow in their motions of summary judgment, and they also argued further that Illinois has not recognized and would not recognize a cause of action in tort for educational malpractice. The motion noted that the majority of jurisdictions have refused to recognize a cause of action for educational malpractice. Moreover, Levinson and Hark argued that Garland's educational malpractice claims are deficient as a matter of law because Garland cannot establish the requisite elements of duty or proximate cause under a negligence theory.

¶ 16    HK Golden Eagle, Sybaris, and Knudson each filed a motion to dismiss those portions of Turek's complaint that allege educational malpractice pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)), contending that those counts should be dismissed because the tort of educational malpractice is not recognized in Illinois.

¶ 17    Defendant Recurrent also filed a motion to dismiss, pursuant to section 2-619 of the Code, Levinson and Hark's amended counterclaims for contribution. In its motion, Recurrent contended that Levinson and Hark's counterclaims must be dismissed because they are based on the tort of educational malpractice, a tort that is not recognized in Illinois.

¶ 18    Arr-ow filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005(c) (West 2008)), regarding Levinson and Hark's counterclaims for contribution against Turek, Recurrent, Arr-ow, and Morgan Stanley. In its motion, Arr-ow contended that the counterclaims for contribution must be dismissed because they are based upon the tort of educational malpractice, a tort that does not exist in Illinois.

¶ 19    After hearing oral arguments on the motions, the trial court entered summary judgment in favor of the flight schools on the basis that the claims sounded in educational malpractice. The court also granted partial summary judgment to Levinson and Hark on those portions of the contribution claims alleging negligent training and instruction, and granted the motions to dismiss based on section 2-619 of the Code as to all counts related to educational malpractice or educational negligence. Subsequently, the trial court entered a written order

reflecting that judgment, finding that any allegations of negligent training and instruction constitute claims for "educational malpractice" and, thus, should not be recognized under Illinois law. It stated:

"IT IS HEREBY ORDERED:

The Court finds that educational malpractice or educational negligence based counts and allegations are improper and are not *** recognized as a tort in the State of Illinois. The Court grants these motions as they relate to any instruction or training that is or has been alleged to have contributed to the cause of this occurrence."

¶ 20 The dismissed claims asserted by Morgan Stanley's third-party complaint for contribution against Levinson, Hark, Recurrent, and Arr-ow state, in relevant part:

"COUNT I
HOWARD D. LEVINSON

* * *

6. On and before January 30, 2006, Howard D. Levinson, acted to train, supervise and instruct MARK TUREK in the use and operation of the Cessna 421B aircraft, Registration No. N920MC.

7. Should liability be assessed against Morgan Stanley, which liability is expressly denied, Morgan Stanley hereby asserts that it has a right of contribution against HOWARD D. LEVINSON, pursuant to the Illinois Contribution Act, 740 ILCS 100/0.01, *et seq*., because he was negligent in one or more of the following respects:

* * *

c. Failed to adequately and properly train Mark Turek on how to operate the subject aircraft;

* * *

e. Failed to safely and properly train, supervise and instruct Mark Turek in the use of the Cessna, including landing maneuvers into Palwaukee[.]"

and:

"COUNT II
HARK CORPORATION

* * *

7. Should liability be assessed against Morgan Stanley, which liability is expressly denied, Morgan Stanley hereby asserts that it has a right of contribution against HARK CORPORATION, pursuant to the Illinois Contribution Act, 740 ILCS 100/0.01, *et seq.*, because HARK CORPORATION was negligent in one or more of the following respects:

* * *

d. HARK CORPORATION is vicariously liable for the actions of its President, Howard D. Levinson, who failed to adequately and properly train Mark Turek on how to operate the subject aircraft."

¶ 21 The dismissed claims asserted by Garland in her sixth amended complaint state, in

relevant part:

"12. On and before January 30, 2006, and at all times mentioned herein, Defendant, LEVINSON, Individually, and/or as an authorized owner agent, apparent agent and/or employee of H.K. GOLDEN EAGLE, INC. and/or Defendant HARK, was negligent in one or more of the following respects:

* * *

b. failed to properly teach, train and instruct MARK TUREK how to perform proper and adequate pre-flight preparation and inspection so as to ensure a safe flight and landing of the aircraft;

c. failed to properly teach, train and instruct MARK TUREK how to plan, utilize and engage in proper communications and coordination of responsibilities between co-pilots;

d. failed to properly teach, train and instruct MARK TUREK how to competently and safely operate the aircraft so as to ensure a safe landing;

e. failed to properly teach, train and instruct MARK TUREK how to engage in and execute safe approach and landing maneuvers;

f. failed to properly teach, train and instruct MARK TUREK how to maintain proper control over the aircraft so as to maintain its flight path;

g. failed to properly teach, train and instruct MARK TUREK how to properly monitor engine and aircraft performance during flight so as to prevent a crash of the aircraft;

h. failed to properly teach, train and instruct MARK TUREK how to provide and utilize proper instructions and communications between co-pilots to ensure a safe flight;

i. failed to properly teach, train and instruct MARK TUREK how to properly respond to and compensate for engine failure and malfunction of the aircraft so as to avoid a crash;

j. failed to properly teach, train and instruct MARK TUREK how to engage in and execute proper emergency maneuvers so as to prevent a crash of the aircraft[.]"

¶ 22 The dismissed claims asserted by Turek in its counterclaim for contribution state, in relevant part:

"HOWARD D. LEVINSON

34. Should liability be assessed against Defendant Turek, which liability is expressly denied, then Defendant Turek, asserts it has a right of contribution against counter-defendant Howard D. Levinson, pursuant to the Illinois Contribution Act, 740 ILCS 100/0.01 *et seq*., because Levinson was a joint tortfeasor due to his following negligent acts or omissions:

a. Levinson failed to properly and adequately train Mark Turek and/or Ken Knudson in the operation of the Subject Aircraft[.]"

and:

"HARK CORPORATION

38. Should liability be assessed against Defendant Turek, which liability is expressly denied, then Defendant Turek, asserts it has a right of contribution against counter-defendant Hark Corporation, pursuant to the Illinois Contribution Act, 740 ILCS 100/0.01 *et seq*., because Hark Corporation was a joint tortfeasor due to its following negligent acts or omissions:

a. Hark Corporation is vicariously liable for the acts and omissions of its President, Levinson, who failed to properly and adequately train Mark Turek and/or Ken Knudson in the operation of the Subject Aircraft."

¶ 23   The parties appealed, and this court consolidated the appeals.

¶ 24                                    ANALYSIS
¶ 25                            I. Educational Malpractice

¶ 26   Appellants contend that the trial court erred in dismissing their claims of educational malpractice. Specifically, appellants contend that the trial court was incorrect in its determination that the negligence claims at issue are noncognizable because they sound in educational malpractice. We first consider whether the appellants' claims were, in fact, claims of negligent instruction, that is, educational malpractice, rather than ordinary negligence claims.

¶ 27   Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). In ruling on a motion for summary judgment, the circuit court is to determine whether a genuine issue of material fact exists, not try a question of fact. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). A party opposing a motion for summary judgment "must present a factual bias which would arguably entitle him to a judgment." *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996). When determining whether a genuine issue of material fact exists, courts construe the pleadings liberally in favor of the nonmoving party. *Williams*, 228 Ill. 2d at 417. "Summary judgment is to be encouraged in the interest of prompt disposition of lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt." *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). "If the plaintiff fails to establish any element of the cause of action asserted, summary judgment for the defendant is proper." *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 215 (2006). We review summary judgment rulings *de novo* (*Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995)) and we will only disturb the decision of the trial court where we find that a genuine issue of material fact exists. *Addison v. Whittenberg*, 124 Ill. 2d 287, 294 (1988).

¶ 28   If a claim raises questions about the reasonableness of an educator's conduct in providing educational services, or if a claim requires an analysis of the quality of education, it is a claim for educational malpractice. See *Dallas Airmotive, Inc. v. FlightSafety International, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008); *Glorvigen v. Cirrus Design Corp.*, 796 N.W.2d

541, 552 (Minn. Ct. App. 2011) ("We defined educational-malpractice claims as those that 'would require the court to engage in a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies.' " (quoting *Alsides v. Brown Institute, Ltd.*, 592 N.W.2d 468 (Minn. Ct. App. 1999)). " 'Where the court is asked to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution, the claim is one of educational malpractice.' " *Glorvigen*, 796 N.W.2d at 553 (quoting *Dallas Airmotive*, 277 S.W.3d at 700).

¶ 29   There are generally three broad categories of educational malpractice claims: "(1) the student alleges that the school negligently failed to provide him with adequate skills; (2) the student alleges that the school negligently diagnosed or failed to diagnose his learning or mental disabilities; or (3) the student alleges that the school negligently supervised his training." *Dallas Airmotive*, 277 S.W.3d at 699. The court in *Dallas Airmotive* provided the following examples:

"If a negligence claim raises questions concerning the reasonableness of the educator's conduct in providing educational services, then the claim is one of educational malpractice. *Christensen v. S. Normal Sch.*, 790 So. 2d 252, 255 (Ala. 2001). Similarly, if the claim requires an 'analysis of the quality of education received and in making that analysis the fact-finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct,' then the claim is one of educational malpractice. *Id.* If the duty alleged to have been breached is the duty to educate effectively, the claim is one of educational malpractice. *Vogel* [*v. Maimonides Academy of Western Connecticut, Inc.*], 754 A.2d [824,] 828 [(Conn. App. Ct. 2000)]. A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice. *Lawrence v. Lorain County Cmty. Coll.*, 127 Ohio App. 3d 546, 713 N.E.2d 478, 480 ([Ohio Ct. App.] 1998); *Alsides*, 592 N.W.2d at 473. Where the court is asked to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution, the claim is one of educational malpractice. *Andre v. Pace Univ.*, 170 Misc. 2d 893, 655 N.Y.S.2d 777, 779 (N.Y. App. Div. 1996)." *Dallas Airmotive*, 277 S.W.3d at 700.

¶ 30   Here, there were multiple allegations of ineffective training by multiple parties, each of which clearly sounded in educational malpractice. Each of the claims dismissed by the trial court asserted that defendants failed to properly train Turek in how to fly and land the aircraft. In the portion of Garland's sixth amended complaint at law that was dismissed by the trial court as an assertion of educational malpractice, quoted in full, *supra*, Garland asserted, *inter alia*, that Levinson failed to properly teach, train, and instruct Turek how to: perform proper and adequate preflight preparation and inspection; plan, utilize and engage in proper communications and coordination of responsibilities between copilots; competently and safely operate the aircraft so as to ensure a safe landing; engage in and execute safe approach and landing maneuvers; maintain proper control over the aircraft so as to maintain its flight path; properly monitor engine and aircraft performance during flight; provide and utilize proper instructions and communications between copilots; respond to and compensate for engine failure and malfunction of the aircraft; and engage in and execute proper emergency maneuvers.

¶ 31    In Morgan Stanley's third-party complaint for contribution that was dismissed by the trial court as educational malpractice, Morgan Stanley asserted that Levinson "acted to train, supervise and instruct" Turek in the use and operation of the subject aircraft; that Levinson "failed to adequately and properly train" Turek on how to operate the aircraft; and "failed to safely and properly train, supervise and instruct" Turek in the use of the aircraft. Morgan Stanley also alleged that Hark should be vicariously liable for the alleged negligent training of Turek.

¶ 32    The claims by the estate of Mark Turek in its counterclaim for contribution, which were dismissed by the trial court as educational malpractice, include allegations that Levinson "failed to properly and adequately train Mark Turek and/or Ken Knudson in the operation of the Subject Aircraft" and that "Hark Corporation is vicariously liable for the acts and omissions of its President, Levinson, who failed to properly and adequately train Mark Turek and/or Ken Knudson in the operation of the Subject Aircraft."

¶ 33    The nature of the appellants' claims that were dismissed by the trial court focuses on the reasonableness of defendants' conduct in providing training, that is, education, to Turek, and would require a jury at trial to analyze the quality and methods of the education provided to Turek, as well as an evaluation of the course of instruction and the soundness of the teaching methods. See *Glorvigen*, 796 N.W.2d at 555 (where "the essence of the claims against appellants is that they failed to provide *** effective training" and because such claims "challenge the effectiveness of the training, they sound in educational malpractice"). While the dissent would have us consider these claims as claims for ordinary negligence, we decline to do so. Because these claims clearly fit within the matrix for claims sounding in educational malpractice, we find no error in the trial court's determination that these claims sound in educational malpractice rather than ordinary negligence.

¶ 34    Appellant Garland's reliance on *Vancura v. Katris*, 391 Ill. App. 3d 350 (2008), *aff'd in part & rev'd in part*, 238 Ill. 2d 352 (2010), does not persuade us differently. Garland argues that, pursuant to *Vancura*, the trial court should have undertaken a duty analysis when faced with this issue and, in so doing, would have concluded that Levinson and Hark did, in fact, have a duty to adequately train Turek. Reliance on *Vancura*, however, is misplaced, as *Vancura* is limited to negligence within an employee/employer context. In *Vancura*, our supreme court considered an employer's liability for the alleged negligent acts of an employee notary public; it did not discuss the tort of educational malpractice. *Vancura*, 238 Ill. 2d 352.

¶ 35    Having determined that the claims in question do assert the tort of educational malpractice, we now turn to whether such tort is cognizable in the State of Illinois. This question is one of first impression in Illinois.

¶ 36    While Illinois has not addressed whether educational malpractice claims are cognizable, most jurisdictions that have considered the issue have found that educational malpractice claims are not cognizable. See, *e.g.*, *Glorvigen*, 796 N.W.2d 541, 553 ("The bar on educational-malpractice claims recognizes that '[a]llowing individuals . . . to assert claims of negligent instruction would avoid the practical reality that, in the end, it is the student who is responsible for his knowledge, including the limits of that knowledge.' " (quoting *Page*

*v. Klein Tools, Inc.*, 610 N.W. 2d 900, 906 (Mich. 2000))); *Johnson v. Clark*, 418 N.W.2d 466 (Mich. Ct. App. 1987); *Dallas Airmotive*, 277 S.W.3d 696; *Christensen v. Southern Normal School*, 790 So. 2d 252, 255 (Ala. 2001) (claim is barred by educational malpractice doctrine if the claims "require an analysis of the quality of education received"); *Gupta v. New Britain General Hospital*, 687 A.2d 111 (Conn. 1996) (claim based on institution's failure to provide "adequate training" was not cognizable); *Lawrence v. Lorain County Community College*, 713 N.E.2d 478 (Ohio Ct. App. 1998) (court would not recognize any claim that educational services were "substandard" or "inadequate"); *Bittle v. Oklahoma City University*, 2000 OK CIV APP 66, 6 P.3d 509 (Okla. Civ. App. 2000) (declining to recognize claim based on "inadequate or improper instruction:"); *Houston v. Mile High Adventist Academy*, 846 F. Supp. 1449, 1455-56 (D. Colo. 1994) (claims that teachers were "not properly trained" and that "school failed to provide adequate instruction" were construed as educational malpractice and properly dismissed); *Finstad v. Washburn University of Topeka*, 845 P.2d 685 (Kan. 1993); *Blane v. Alabama Commercial College, Inc.*, 585 So. 2d 866 (Ala. 1991); *D.S.W. v. Fairbanks North Star Borough School District*, 628 P.2d 554 (Alaska 1981); *Peter W. v. San Francisco Unified School District*, 131 Cal. Rptr. 854 (Cal. Ct. App. 1976); *Smith v. Alameda County Social Services Agency*, 153 Cal. Rptr. 712 (Cal. Ct. App. 1979); *Tubell v. Dade County Public Schools*, 419 So. 2d 388 (Fla. Dist. Ct. App. 1982); *Wickstrom v. North Idaho College*, 725 P.2d 155 (Idaho 1986); *Moore v. Vanderloo*, 386 N.W.2d 108 (Iowa 1986); *Rich v. Kentucky Country Day, Inc.*, 793 S.W.2d 832 (Ky. Ct. App. 1990); *Hunter v. Board of Education*, 439 A.2d 582 (Md. 1982); *Donohue v. Copiague Union Free School District*, 391 N.E.2d 1352 (N.Y. 1979); *Wilson v. Continental Insurance Cos.*, 274 N.W.2d 679 (Wis. 1979); but see *B.M. v. State*, 649 P.2d 425 (Mont. 1982).

¶ 37     Those courts that have refused to recognize claims of educational malpractice have done so based on various public policy grounds, including: (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will "embroil the courts into overseeing the day-to-day operations of schools." (Internal quotation marks omitted.) *Alsides*, 592 N.W.2d at 472.

¶ 38     These same public policy concerns have persuaded courts to dismiss claims based on educational malpractice against flight training schools and flight instructors. See *Dallas Airmotive*, 277 S.W.3d 696.[3] The *Dallas Airmotive* court addressed the distinction between

---

[3]These and other related public policy grounds have also been cited by various courts that have declined to impose liability on proprietary and trade schools for educational malpractice. For example, in *Cavaliere v. Duff's Business Institute*, 605 A.2d 397 (1992), the Pennsylvania court upheld the dismissal of the plaintiffs' claim for educational malpractice brought against a court reporting school. The court explained:

"The concerns that are clearly appropriate in the case of an academic institution are equally raised by an attempt to inquire into the sufficiency of teaching methods at a trade

a noncognizable educational malpractice claim and an ordinary negligence claim in the educational context. It began by noting that, even in the educational context, there remains a duty not to cause physical injury by negligent conduct. *Dallas Airmotive*, 277 S.W.3d at 700 (citing *Vogel*, 754 A.2d at 827 n.7). However, the "duty pertains to an educator or supervisor using reasonable care so as not to cause physical injury to a trainee during the course of instruction or supervision." *Dallas Airmotive*, 277 S.W.3d at 700 (citing *Vogel*, 754 A.2d at 828). It then gave examples such as: "a woodworking shop instructor has a duty 'to exercise reasonable care not only to instruct and warn students in the safe and proper operation of the machines provided for their use but also to furnish and have available such appliances, if any, as would be reasonably necessary for the safe and proper use of the machines.' " *Dallas Airmotive*, 277 S.W.3d at 700-01 (quoting *Kirchner v. Yale University*, 192 A.2d 641, 643 (Conn. 1963)). "The duty recognized was the duty owed by an educator not to cause physical injury by negligent conduct *in the course* of instruction." (Emphasis in original.) *Dallas Airmotive*, 277 S.W.3d at 701.

¶ 39 With this background, the *Dallas Airmotive* court found that the claim at issue against a company offering flight instruction sounded in educational malpractice, as it was a claim pertaining to the quality of instruction regarding a flight simulator and it attacked the quality of instruction. *Dallas Airmotive*, 277 S.W.3d at 701. Finally, the *Dallas Airmotive* court noted that the generally recognized public policy grounds for refusing to recognize the tort of educational malpractice pertain in the arena of claims regarding flight instruction:

> "many factors contribute to the quality of a student's education and the quality of his later performance. The recognition of liability, or course, would be a great invitation to speculation as to causation. *See Sellers v. Sch. Bd. of the City of Manassas*, 960 F. Supp. 1006, 1014 & n.36 (E.D. Va. 1997). Public policy also suggests that schools, and their regulating, accrediting, and certifying agencies, not courts, need to make curriculum decisions. *See Moore*, 386 N.W.2d at 115." *Dallas Airmotive*, 277 S.W. 3d at 701.

¶ 40 The United States Court of Appeals for the Seventh Circuit has applied Illinois substantive law to find that, if presented with the question, the Illinois Supreme Court would refuse to recognize the tort of educational malpractice. *Ross v. Creighton University*, 957 F.2d 410, 415 (7th Cir. 1992) ("We believe that the Illinois Supreme Court would find the experience of other jurisdictions persuasive and, consequently, that these policy considerations are compelling. Consequently, the Illinois Supreme Court would refuse to recognize the tort of educational malpractice."). In its opinion, the court outlined the various public policy concerns that "counsel against allowing claims for educational malpractice," including that: (1) "it may be a 'practical impossibility [to] prov[e] that the alleged malpractice of the teacher proximately caused the learning deficiency of the plaintiff student' " (*Ross*, 957 F.2d at 414 (quoting *Donohue v. Copiague Union Free School District*,

---

or business school like the Institute. This court would be hard pressed to determine which of several alternative methods of teaching court reporting, or auto repair, or any other specialized business or trade skill was the appropriate one. Nor would it be an easy task to determine why a particular student failed to acquire certain skills after pursuing a course of instruction aimed at teaching those skills." *Cavaliere*, 605 A.2d at 403-04.

391 N.E.2d 1352, 1355 (N.Y. 1979) (Wachtler, J., concurring))); (2) "[t]heories of education are not uniform, and 'different but acceptable scientific methods of academic training [make] it unfeasible to formulate a standard by which to judge the conduct of those delivering the services' " (*Ross*, 957 F.2d at 414 (quoting *Swidryk v. Saint Michael's Medical Center*, 493 A.2d 641, 643 (N.J. Super. Ct. Law. Div. 1985), citing *Peter W.*, 131 Cal. Rptr. 854)); and (3) the courts fear the increased potential for a flood of litigation, as well as the possibility that it "threatens to embroil the courts into overseeing the day-to-day operations of schools" (*Ross*, 957 F.2d at 414 (citing *Donohue*, 391 N.E.2d at 1354)); *Hoffman v. Board of Education*, 400 N.E.2d 317 (N.Y. 1979); *Hunter v. Board of Education*, 439 A.2d 582 (Md. 1982)).

¶ 41    Our supreme court has rejected constitutional claims by students against a public school district and the State Board of Education for a failure to provide an adequate education, as well. *Lewis E. v. Spagnolo*, 186 Ill. 2d 198 (1999). The *Lewis* court held that issues relating to the quality of education should not be measured or determined by the courts. *Lewis*, 186 Ill. 2d at 208. The *Lewis* court reaffirmed its previous decision in *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1 (1996), that " 'questions relating to the *quality of education* are solely for the legislative branch to answer.' " (Emphasis in original.) *Lewis*, 186 Ill. 2d at 208 (quoting *Committee for Educational Rights*, 174 Ill. 2d at 24).

¶ 42    We agree with the reasoning employed by those courts that have declined to recognize a cause of action for educational malpractice and therefore hold that claims sounding in educational malpractice, that is, claims alleging negligent instruction, are not cognizable in Illinois.

¶ 43    In the case at bar, the claims at issue all pertain to the teaching, training, and instructing of Turek prior to the date of the accident, and, accordingly, relate to the quality of instruction. In essence, plaintiffs argue that the negligent performance of a former student (Turek) caused an accident involving third parties and that the former student's negligence was itself caused by the poor quality of the education or training that the instructor or instructional institution (Recurrent, Arr-ow, Levinson and Hark) provided to the student. These are claims of educational malpractice and are barred, therefore, as a matter of law.

¶ 44    Accordingly, the trial court did not err in granting partial summary judgment as to these claims where, because the tort of educational malpractice is not recognized in Illinois, there was no genuine issue of material fact. See 735 ILCS 5/2-1005(c) (West 2008).

¶ 45    Appellants' reliance on *In re Air Crash Near Clarence Center, New York, on February 12, 2009*, No. 09-md-2085, 2010 WL 5185106 (W.D.N.Y Dec. 12, 2010), and *Doe v. Yale University*, 748 A.2d 834 (Conn. 2000), to argue that we should carve out an exclusion from the educational malpractice bar for those cases which allege actual physical injury is unpersuasive. *In re Air Crash Near Clarence Center* is unpersuasive because the district court granted a motion to remand a matter to state court, not because it found an exception to the educational malpractice bar, but because, in part, it found that the state court could possibly determine that the educational malpractice bar would not apply in that particular situation under New York law. *In re Air Crash Near Clarence Center*, 2010 WL 5185106. *Doe* is distinguishable where the case at bar does not involve an injury sustained by a student

-14-

during the course of instruction from a danger created by the instructor, but an injury allegedly caused by prior negligent instruction. See *Doe*, 748 A.2d 834 (medical resident injured in training on use of needle).

¶ 46 Appellant estate of Garland also contends that, if this court upholds the bar against educational malpractice claims, it should do so only against Recurrent and Arr-ow. It argues that Levinson and Hark should be treated differently because they are "nontraditional educational institutions." Citing *Marshall v. Burger King Corp.*, 222 Ill. 2d 422 (2006), it contends that the relationship between Levinson and Turek was "much closer and immediate" than that of an ordinary school and student. Based on this relationship, it argues, they should be excepted from the bar against educational malpractice claims. See *Burger King*, 222 Ill. 2d at 436-37 (in ordinary negligence action, court stated "[t]he touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff"). Morgan Stanley, Estate of Turek, and Estate of Garland also argue that the trial court erred by employing an "overly expansive interpretation" of the educational malpractice doctrine and should have found that Levinson and Hark were distinct from educational institutions. These arguments are unpersuasive, as the relationship between instructor Levinson and student Turek is irrelevant where there is no legal basis to treat educators differently under the educational malpractice bar. See, *e.g.*, *Glorvigen*, 796 N.W.2d at 554-55 (although the defendant airplane manufacturer was "not primarily in the business of education, it assumed educational responsibilities related to, but distinct from, its function as a manufacturer by offering transition training and thereby entered into an educational relationship with [the injured plaintiff], to which the educational-malpractice bar applies"). Use of the educational malpractice defense doctrine turns on the type of claim raised, not the type of defendant facing the claim. Allowing otherwise would create an unworkable, fact-intensive exception to the rule.

¶ 47 As we have previously stated, if a claim raises questions about the reasonableness of an educator's conduct in providing educational services, or if a claim requires an analysis of the quality of education, then it is a noncognizable claim for educational malpractice. See *Dallas Airmotive*, 277 S.W.3d at 700; *Glorvigen*, 796 N.W.2d at 552 ("educational-malpractice claims [are] those that 'would require the court to engage in a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative polices' " (quoting *Alsides*, 592 N.W.2d at 473)). The correct inquiry, therefore, is based on the nature of the claim rather than on the nature of the defendant.

¶ 48 In this regard, we find little if any distinction between a school and a qualified individual instructing a student pilot. We consider the type of claim raised–here, whether Levinson was negligent in training Turek to fly the aircraft–rather than whether the instructor was a school or a qualified individual. The answer to this question clearly requires an analysis of the educator's conduct in providing educational services. Because the claim challenges the effectiveness of the training provided to Turek, it sounds in educational malpractice and is barred as a matter of law. See *Glorvigen*, 796 N.W.2d at 552.

¶ 50     Finally, Recurrent challenges this court's jurisdiction in this cause. Specifically, Recurrent argues that the trial court erred in modifying its dismissal order which included Rule 304(a) language, extending the time for appellants to file their notices of appeal. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). According to Recurrent, appellants' notices of appeal were untimely because they were not filed within 30 days of the original dismissal order, and the cross-appeals which followed were therefore also untimely. We disagree.

¶ 51     Rule 304(a) pertains to appeals from final judgments that do not dispose of an entire proceeding. When a trial court makes a finding pursuant to Rule 304(a) that there is no just reason for delaying enforcement or appeal of a final judgment, any notice of appeal from that final judgment must be filed within 30 days. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010); Ill. S. Ct. R. 303(a) (eff. May 30, 2008). The Rule 304(a) finding, however, does not divest the trial court of its jurisdiction in the cause. *Greer v. Yellow Cab Co.*, 221 Ill. App. 3d 908, 913-14 (1991). A trial court may vacate or modify its Rule 304(a) finding within 30 days. *Dowling v. Otis Elevator Co.*, 192 Ill. App. 3d 1064, 1069 (1989); *Battisfore v. Moraites*, 186 Ill. App. 3d 180, 185 (1989).

¶ 52     Here, the trial court granted Recurrent's motion for summary judgment on July 19, 2010, and made an express finding that its order was final and appealable pursuant to Illinois Supreme Court Rule 304(a). The court specified:

> "(1) This motion coming to be heard upon the parties motions re: educational malpractice,
>
> IT IS HEREBY ORDERED:
>
> That [with] respect to [defendants] Arrow II and [Recurrent] only, all motions to dismiss/motions for summary judgment are granted on the merits and with prejudice., and this is a final and appealable order per Ill. Sup. Ct. Rule 304(a)."

Then, within 30 days, on August 5, 2010, the court modified its July 19, 2010, order to an order regarding all of the educational malpractice claims in all of the consolidated cases, stating:

> "This matter coming to be heard upon all motions related to educational malpractice, in all consolidated actions, with due notice to all parties, and having previously ruled that all ARR-OW and Recurrent Training Center's motions to for [*sic*] summary judgment and to dismiss are granted, this Court now enters the following order:
>
> IT IS HEREBY ORDERED:
>
> The Court finds that educational malpractice or educational negligence based counts and allegations are improper and are not a recognized [*sic*] as a tort in the State of Illinois. The Court grants these motions as they relate to any instruction or training that is or has been alleged to have contributed to the cause of this occurrence."

The court included Rule 304(a) language, including commentary pertaining to the July 19, 2010, order:

> "The Illinois Supreme Court Rule 304(a) language is entered on this issue as to all parties and claims involved, the court finding there is no just reason for delaying either

enforcement appeal or both. Further, the order of July 19, 2010 is hereby amended to reflect that Illinois Supreme Court Rule 304(a) language is hereby granted as of the date of this order as to all educational malpractice rulings and the time for any appeal under 304(a) runs from the date of this order."

¶ 53 We find that the trial court's August 5, 2010, modification of its July 19, 2010, Rule 304(a) language was not error, as it retained jurisdiction to modify its final judgments and orders within 30 days of their entry. *Dowling*, 192 Ill. App. 3d at 1069; *Battisfore*, 186 Ill. App. 3d at 185. Thereafter, Morgan Stanley, Garland, and Turek filed timely notices of appeal regarding the educational malpractice ruling as it pertained to Levinson and Hark. Morgan Stanley and Garland filed on September 3, 2010, and Turek filed on September 7, 2010.[4]

¶ 54 Thereafter, the other parties to the appeal filed their timely notices of appeal. Pursuant to Supreme Court Rule 303(a)(3), when a party files a timely notice of appeal, other parties have 10 days within which to join the appeal, appeal separately, or cross-appeal by filing a notice of appeal. Ill. S. Ct. R. 303(a)(3). Levinson and Hark filed their notice of cross-appeal relative to the educational malpractice ruling on September 14, 2010, which appeal was joined by Knudson, Sybaris, and HK Golden Eagle on September 16, 2010. Accordingly, the cross-appellants' notices of appeal were filed within 10 days of a timely notice of appeal and were, therefore, timely under Rule 303(a)(3). The parties timely filed their notices of appeal and the consolidated cause is properly before this court.

¶ 55                                    CONCLUSION

¶ 56 For the foregoing reasons, we affirm the decision of the circuit court of Cook County.


¶ 57 Affirmed.


¶ 58 JUSTICE PUCINSKI, dissenting:

¶ 59 Respectfully, I dissent. Appellees Levinson and Hark Corporation have presented a strawman argument that the alleged counterclaims constitute claims for educational malpractice when in fact negligence is alleged. There are genuine issues of material fact that the allegations state a direct cause of action under ordinary negligence principles. "To succeed in an action for negligence, a plaintiff must prove facts that establish the existence of a duty, a breach of the duty, and an injury to the plaintiff which was proximately caused by the breach." *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228 (2000) (citing *Cunis v. Brennan*, 56 Ill. 2d 372, 374 (1974)). The "touchstone" of a duty inquiry "involves four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden on the defendant." *Vancura*, 238 Ill. 2d at 383 (citing *Marshall v. Burger*

---

[4]The thirtieth day after August 5, 2010, fell on Saturday, September 4, 2010. The next court day was not until September 7, 2010, due to a court holiday. Thus, Turek's notice was timely.

*King Corp.*, 222 Ill. 2d 422, 436-37 (2006)).

¶ 60    There are several theories of tort liability which are presented by the facts alleged in this case. Section 323 of the Restatement (Second) of Torts sets forth a basis for liability for a voluntary undertaking that is performed negligently:

"§ 323. Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323 (1965).

Section 323 applies where there has been physical or bodily harm, as in this case. See *Vancura*, 238 Ill. 2d at 382. Section 323 applies to the duty that was owed directly to Turek by Levinson.

¶ 61    Section 324A of the Restatement provides for limited liability to third persons based on the negligent performance of a service or undertaking where the provision of services results in physical harm. *Vancura*, 238 Ill. 2d at 383 n.6. Section 324A provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) Torts § 324A (1965).

" ' "By undertaking to act" ' a defendant becomes ' "subject to a duty with respect to the manner of performance." ' " *Bell v. Hutsell*, 2011 IL 110724, ¶ 23 (quoting *Wakulich v. Mraz*, 203 Ill. 2d 223, 242 (2003), quoting *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 85 (1964)).

¶ 62    I find that appellant Garland's reliance on *Vancura* is misplaced not only because it addressed negligence within an employer/employee context, which is not present here, but also because there was only economic harm and no physical harm (*Vancura*, 238 Ill. 2d at 382), as there was in this case. Thus, our supreme court in *Vancura* found that section 323 of the Restatement (Second) of Torts concerning liability for a voluntary undertaking did not apply. *Vancura*, 238 Ill. 2d at 382. However, here we are presented precisely with circumstances to which section 323 applies–a negligent voluntary undertaking that resulted in bodily harm.

¶ 63    Negligence is sufficiently pled in this case in that Levinson undertook to train Turek how to fly his specific plane, the Cessna 421B, but negligently failed to adequately and properly train and instruct Turek on how to operate that aircraft, thereby proximately causing Waugh's

death. There was evidence that Levinson failed to tell Turek not to push the throttle, did not adequately instruct Turek how to perform a landing at night, and did not instruct Turek regarding icing. Here, the allegations sufficiently set forth that a duty to exercise reasonable care was created by Levinson's voluntary undertaking to train Turek and that Levinson failed to exercise reasonable care.

¶ 64      Further, section 302A of the Restatement provides:

"§ 302A. Risk of Negligence or Recklessness of Others

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person." Restatement (Second) Torts § 302A (1965).

¶ 65      Additionally, section 390, regarding the liability of persons who supply their chattel for use by others, provides:

"§ 390. Chattel for Use by Person Known to be Incompetent

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." Restatement (Second) Torts § 390 (1965).

¶ 66      Here, there is evidence that prior to the accident Levinson was aware that Turek liked to fly fast, flew "kind of like" a sports car driver, and would ride the brakes too much.

¶ 67      In addition, vicarious liability against Hark Corporation for Levinson's negligence is sufficiently alleged. See *Zahl v. Krupa*, 399 Ill. App. 3d 993, 1020 (2010) (" 'in the absence of special circumstances it is the corporation *** who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents' " (quoting *Meyers v. Holley*, 537 U.S. 280, 286 (2003))).

¶ 68      There is a dearth of Illinois precedent addressing similar factual circumstances, as the parties implicitly recognize in citing to authorities in other jurisdictions. The decision by the appeals court of Missouri in *Dallas Airmotive* notwithstanding, the majority of other jurisdictions support the view that this action sounds in ordinary negligence. See *In re Cessna 208 Series Aircraft Products Liability Litigation*, 546 F. Supp. 2d 1153 (D. Kan. 2008) (holding in a suit arising from fatal plane crash that the pilot's family's claims that the flight training center negligently failed to properly instruct pilots of particular aircraft on how to avoid ice accumulation and that the center failed to exercise reasonable care in performing flight training services were cognizable negligence claims under Texas law and were not prohibited educational malpractice claims). See also *De Rienzo v. Morristown Airport Corp.*, 146 A.2d 127 (N.J. 1958) (holding that the evidence presented a question of fact for jury as to whether defendant was negligent in an action by a flight student with limited flying experience for injuries sustained when he crashed while taking off on a solo practice flight with locked controls in a dual trainer airplane owned by the defendant, which had undertaken to teach student to fly but had failed to instruct student about locked controls); *Farish v. Canton Flying Services, Inc.*, 58 So. 2d 915 (Miss. 1952) (holding in a wrongful death action

against an airplane company that the evidence presented a question for jury as to whether the airplane company had failed to train and instruct the pilot sufficiently).

¶ 69    The Kansas court in *In re Cessna* cited to *Page v. Klein Tools, Inc.*, 610 N.W.2d 900 (2000), where the court held that a claim should be characterized as one of educational malpractice, which is not cognizable under Michigan law. The *In re Cessna* court, however, relied on the dissent in *Page*, which noted that the plaintiff asserted a claim for negligence, in that the defendant taught improper techniques for how to use a particular piece of equipment for climbing utility poles, which did not fall within the disfavored realm of educational malpractice. *In re Cessna 208 Series Aircraft Products*, 546 F. Supp. 2d at 1158-59 (citing *Page*, 610 N.W.2d at 909 (Kelly, J., dissenting, joined by Cavanagh, J.)). The *In re Cessna* court thus affirmed the lower court's denial of the defendant flight school's motion for summary judgment, finding that the lower court's ruling was a reasonable application of Texas law and was supported by the reasoning of the dissent in *Page*, as well as *Doe v. Yale University*, 748 A.2d 834 (2000), which held that the plaintiff's claim was a viable claim for negligence, not a nonviable claim for educational malpractice. *In re Cessna 208 Series Aircraft Products*, 546 F. Supp. 2d at 1159.

¶ 70    The court in *Doe* recognized that, "at first blush, the distinction between an educational malpractice claim *** and a cognizable negligence claim arising in the educational context *** may not always be clear." *Doe*, 748 A.2d at 847. However, as the court aptly stated in *Doe*:

"[T]he distinction lies in the duty that is alleged to have been breached. If the duty alleged to have been breached is the duty to educate effectively, the claim is not cognizable. [Citation.] If the duty alleged to have been breached is the common-law duty not to cause physical injury by negligent conduct, such a claim is, of course, cognizable. That common-law duty does not disappear when the negligent conduct occurs in an educational setting." *Doe*, 748 A.2d at 847.

¶ 71    I do not find *Doe* distinguishable because the injuries did not occur during the course of instruction from a danger created by the instructor. Such a result improperly removes the well-established tort principles of foreseeability and proximate cause from the negligence analysis and would allow parties to escape the foreseeable consequences of their negligence. The illustrations to Restatement section 324A make clear that liability may attach when an undertaking is negligently performed and injures a third party later, after the negligent actor is no longer present. See Restatement (Second) Torts § 324A illus. (1965). Levinson undertook to train Turek how to operate his airplane and the fact that Levinson was not actually in the act of instructing him at the time of the crash does not *ipso facto* mean his prior negligent instruction was not a proximate cause of the accident. Here, it was reasonably foreseeable that negligently giving inadequate instructions increased the risk of harm and could lead to an accident.

¶ 72    Defendants have constructed a strawman argument in the form of "educational malpractice" to obviate what is clearly a case of negligence. Here, the allegations are not simply that Levinson and Hark Corporation failed to educate effectively and committed so-called "educational malpractice." All factual settings involving instruction do not

automatically fall under the "educational malpractice" rubric. Here there was no educational school setting with a curriculum. Levinson and Hark Corporation were not a flight school. Levinson did not charge Turek for any flight lessons but rather undertook to train him gratuitously. The harm alleged is not mere failure to provide better education. Rather, the allegations are that Levinson's failure to properly train instruct Turek constituted negligence resulting in the death of Michael Patrick Waugh. Calling it educational does not make it so. What occurred in this case is that Levinson undertook to instruct Turek and allowed Turek to fly Levinson's airplane, but negligently failed to train him how to properly operate that specific airplane, the Cessna 421B, resulting in the decedent's death. I do not believe the parties here should be able to avoid liability for their negligence by creative argument and recasting the complaint as stating a claim that was not even pled. The result in this case ignores ordinary negligence principles and sets bad precedent in allowing owners and operators of aircrafts to avoid liability for their failure to exercise reasonable care in training and/or allowing others to fly their airplanes. The fact that the negligence in this case occurred under the guise of providing instructions or training does not vitiate liability for ordinary negligence. I find genuine issues of material fact exist and I would reverse and remand for further proceedings.