HERMAN VOGEL *v.* MAIMONIDES ACADEMY OF
WESTERN CONNECTICUT, INC.
(AC 18908)

Schaller, Mihalakos and Zarella, Js.

Argued February 25—officially released July 11, 2000

*Edward V. Walsh,* for the appellant (plaintiff).

*Christine S. Synodi,* for the appellee (defendant).

*Opinion*

ZARELLA, J. The plaintiff, Herman Vogel, appeals from the judgment of the trial court, rendered after the granting of the motion for summary judgment filed by the defendant, Maimonides Academy of Western Connecticut, Inc. On appeal, the plaintiff claims that the court improperly (1) granted the defendant's motion for summary judgment and (2) denied the plaintiff's motion to reargue and for reconsideration of the decision to grant the motion for summary judgment. We affirm the judgment of the trial court.

The record discloses the following undisputed facts. In March, 1992, the plaintiff resided with his wife and two daughters in Newtown. At that time, his three and one-half year old daughter was enrolled in a school operated by the defendant. While enrolled in the defendant's school, the plaintiff's daughter was taught a course titled "Family Life Educational Philosophy." The purpose of the course was to help students to develop skills that would enable them to make sound value judgments and moral decisions regarding interpersonal relationships. Part of the curriculum was designed to teach the difference between proper and improper touching.

On March 27, 1992, while at the defendant's school, the plaintiff's daughter vocalized words about "daddy" and "touching." The personnel of the defendant school reported this statement to the department of children and families (department).[1] The department investigated the plaintiff concerning the possible sexual abuse of his daughter.

---

[1] Effective July 1, 1993, the department of children and youth services was succeeded by the department of children and families. See General Statutes § 17a-1 (c). For ease of reference, we refer to the agency as the department throughout this opinion.

The first count of the plaintiff's revised complaint alleges that the defendant's false accusations placed him in a false light and subjected him to unjustified criticism. The plaintiff claims that as a result of the defendant's actions, his reputation was damaged, his family life was disrupted and he required psychiatric counseling, incurred medical expenses and lost wages and employment opportunities.[2]

The second count of the revised complaint incorporates many of the allegations of the first count and alleges that the defendant intentionally inflicted emotional distress on the plaintiff.[3] In the third count of the revised complaint, the plaintiff alleges that the defendant acted recklessly in modifying the course and teaching it to children his daughter's age and, as a result, the plaintiff sustained the injuries previously discussed.[4]

[2] The first count of the revised complaint states in relevant part:

"7. On or after March 27, 1992, an agent or agents of the defendant, directly or indirectly through other employees of defendant, without verification and without seeking further clarification of a statement made by [the defendant's daughter], contacted the Connecticut Department of Children and Youth Services to report that the plaintiff inappropriately touched his daughter . . . and/or exposed [her] to inappropriate sexual behavior.

"8. Due to the defendant's false allegations concerning plaintiff's behavior toward his daughter, the plaintiff was placed in a false light as to his history, character and beliefs in the public eye.

"9. The false reporting and accusations characterizing the plaintiff as a sexually abusive parent were highly offensive to any reasonable person in that his moral turpitude [sic] was wrongly called into question and consequently damaged."

[3] The second count of the revised complaint states in relevant part:

"12. The plaintiff's emotional distress, which is causally related in this matter, has forced the plaintiff to expend moneys on psychiatric counseling and will cause him to expend future sums on psychiatric counseling."

[4] The third count of the revised complaint states in relevant part:

"8. The modification and teaching of the philosophy to 3 1/2 year olds . . . was a reckless and wanton act which was a substantial factor in bringing about plaintiff's injuries as stated in the First Count . . . .

"9. The defendant had a duty to properly instruct plaintiff's child, taking into consideration the child's young age; breached said duty by improperly instructing the child on 'good touching' and 'bad touching'; recklessly destroyed the father's reputation in the community; caused the plaintiff to

The defendant filed its answer and a special defense dated June 26, 1995. In its special defense, the defendant claimed immunity from liability for acts arising from the reporting of suspected child abuse pursuant to General Statutes (Rev. to 1991) § 17a-101 et seq.[5]

The defendant filed its motion for summary judgment on July 7, 1997, accompanied by a memorandum of law. The plaintiff objected, and filed an opposing memorandum and his affidavit. The key paragraphs of the affidavit state that the conduct of the defendant was reckless

---

expend time and money proving his innocence; and caused the plaintiff to seek psychiatric counseling for the severe distress he was placed under."

[5] General Statutes (Rev. to 1991) § 17a-101 provides in relevant part: "(a) The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse, investigation of such reports by a social agency, and provision of services, where needed, to such child and family.

"(b) Any . . . school teacher . . . or any person paid for caring for children in a day care center . . . shall report or cause a report to be made in accordance with the provisions of subsection (c) of this section . . . .

"(c) An oral report shall be made immediately by telephone or otherwise, to the state commissioner of children and youth services or his representative, or the local police department or the state police . . . . A local police department or the state police shall notify the commissioner of children and youth services or his designee within twenty-four hours of receiving an oral report alleging serious physical abuse or sexual abuse of a child. . . ."

General Statutes (Rev. to 1991) § 17a-102 provides in relevant part: "Any of the persons, institutions or agencies described in subsection (b) of section 17a-101 having reasonable cause to suspect or believe that any child under the age of eighteen is in danger of being abused, but who does not have reasonable cause to suspect or believe any such abuse has actually occurred, shall immediately cause a written report to be made to the state commissioner of children and youth services . . . . Any such person, institution or agency which, in good faith, makes the report required by this section shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed and shall have the same immunity with respect to any judicial proceeding which results from such report."

This immunity provision now is found in § 17a-101e (b).

in modifying and teaching the program to a three and one-half year old. The affidavit basically reiterated the allegations in the revised complaint. The court, after hearing arguments, granted the motion. Thereafter, the plaintiff filed a motion to reargue and for reconsideration. The court denied the motion, and the plaintiff appealed.

## I

The plaintiff claims first that the court improperly granted the defendant's motion for summary judgment on the third count of his revised complaint.[6] We disagree.

The standard of review for summary judgment is well established. "Practice Book § [17-49] mandates that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Fernandez* v. *Standard Fire Ins. Co.*, 44 Conn. App. 220, 222–23, 688 A.2d 349 (1997). Our review of the court's judgment is de novo because this appeal raises a question of law. See *Serrano* v. *Burns*, 248 Conn. 419, 425, 727 A.2d 1276 (1999).

The plaintiff alleges in the third count of his revised complaint that the defendant recklessly brought about his injuries by improperly instructing his child. The plaintiff's claim for reckless instruction of an improper curriculum is essentially a claim for educational mal-

---

[6] The plaintiff briefed his first claim as challenging the court's granting of the summary judgment motion as to all three counts of the revised complaint. After our review, however, we conclude that the issues raised by the plaintiff concerning the first two counts are wholly without merit.

practice, a claim our Supreme Court declined to recognize in *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 687 A.2d 111 (1996).[7]

In *Gupta*, the court joined the vast majority of states that have rejected educational malpractice claims sounding in tort. The court noted in dictum that a claim for educational malpractice "raise[s] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students—questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts. *Cencor, Inc.* v. *Tolman*, 868 P.2d 396, 399 (Colo. 1994) (en banc). Because these tort principles are difficult, if not impossible, to apply in the academic environment, courts have almost universally held that claims of educational malpractice are not cognizable. Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached. See, e.g., *Peter W.* v. *San Francisco Unified School District*, 60 Cal. App. 3d 814, 825, 131 Cal. Rptr. 854 (1976) (finding no conceivable workability of a rule of care against which [teachers'] alleged conduct may be measured). In entertaining such claims, moreover, courts are required not merely

---

[7] "In educational malpractice cases, a plaintiff sues his or her academic institution for *tortiously* failing to provide adequate educational services; see, e.g., *Peter W.* v. *San Francisco Unified School District*, 60 Cal. App. 3d 814, 131 Cal. Rptr. 854 (1976); or for *tortiously* failing to diagnose educational impediments. See, e.g., *Hoffman* v. *Board of Education*, 49 N.Y.2d 121, 400 N.E.2d 317, 424 N.Y.S.2d 376 (1979); see generally, D. Morgan, 'Liability for Medical Education,' 8 J. Legal Med. 305, 307–15 (1987)." (Emphasis in original.) *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 591 n.15.

Although the plaintiff claims that his recklessness claim is not one for educational malpractice, we consider the plaintiff's claim that the defendant school tortiously taught his daughter improper curriculum given her age, to be a claim for educational malpractice.

to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies. *Donohue* v. *Copiague Union Free School District*, [47 N.Y.2d 440, 445, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979)]." (Internal quotation marks omitted.) *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 590–91.

The *Gupta* court further stated that the "jurisprudential considerations that shed doubt on the viability of the tort of educational malpractice also inform our analysis of a *contract* claim based on inadequate educational services." (Emphasis in original.) Id., 591. The court noted, however, that a cause of action for institutional breach of contract for educational services exists in at least two situations. Id., 592. "The first would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. See *Wickstrom* v. *North Idaho College*, 111 Idaho 450, 452, 725 P.2d 155 (1986); *Ross* v. *Creighton University*, [957 F.2d 410, 417 (7th Cir. 1992)]. The second would arise if the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program. See, e.g., *Cencor, Inc.* v. *Tolman*, supra, 868 P.2d 399; *Paladino* v. *Adelphi University*, [89 App. Div. 2d 85, 92, 454 N.Y.S.2d 868 (1982)]." *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 592–93.

Our Supreme Court has recently had occasion to address this issue in detail. In *Doe* v. *Yale University*, 252 Conn. 641, 659, 748 A.2d 834 (2000), the court stated, "If the duty alleged to have been breached is the duty to educate effectively, the claim is not cognizable. *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 593–94. If the duty alleged to have been breached is the

common-law duty not to cause physical injury by negligent conduct, such a claim is, of course, cognizable. That common-law duty does not disappear when the negligent conduct occurs in an educational setting. This principle underlies this court's decision in [*Kirchner* v. *Yale University*, 150 Conn. 623, 192 A.2d 641 (1963)]. The duty of an educator or supervisor to use reasonable care so as not to cause physical injury to a trainee during the course of instruction or supervision is not novel." The allegations of the plaintiff's complaint clearly allege a breach of a duty to educate effectively and, thus, the claim is not cognizable. We conclude, therefore, that under the facts of this case, the plaintiff's claim of educational malpractice properly did not survive the defendant's motion for summary judgment.

II

The plaintiff contends finally that the court improperly denied his motion to reargue and for reconsideration of the court's decision to grant the defendant's motion for summary judgment. We disagree.

Our standard of review regarding challenges to a trial court's ruling on a motion for reconsideration is abuse of discretion. See *Biro* v. *Hill*, 231 Conn. 462, 468, 650 A.2d 541 (1994) (analyzing denial of plaintiff's motion for reconsideration under abuse of discretion standard). Because we conclude that the motion for summary judgment properly was granted, the court did not abuse its discretion in denying the plaintiff's motion to reargue and for reconsideration.

The judgment is affirmed.

In this opinion the other judges concurred.