**DALLAS AIRMOTIVE, INC., Appellant,**

v.

**FLIGHTSAFETY INTERNATIONAL, INC., Respondent.**

**Nos. WD 68784, WD 68785.**

Missouri Court of Appeals, Western District.

Nov. 25, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2009.

Application for Transfer Denied March 31, 2009.

John M. Murray, Tampa, FL, argues for appellant; Martin M. Montemore, Robert W. Cotter, and Patrick J. Kaine, Kansas City, MO, join on the briefs, for appellant.

William L. Yocum, Kansas City, MO, argues for respondent; William E. Quirk, Cary Miller, Kansas City, MO, join on the briefs, for respondent.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

In June 2001, after taking off in Missouri, a Piper turboprop crashed in Tennessee, killing the pilot and his four passengers. The surviving family members of the decedents brought suit against Dallas Airmotive, Inc., an entity that provided maintenance for the aircraft, and FlightSafety International, Inc., an FAA–certified flight training school, that had provided training to the pilot in the operation of the turboprop by way of a simulator. Dallas Airmotive reached settlements with the claimants and pursued cross-claims for contribution against FlightSafety, alleging negligence and breach of warranty. FlightSafety moved for summary judgment on the cross-claims, arguing, *inter alia,* that the cross-claim of Dallas Airmotive was premised on the theory of educational malpractice, which is a theory of liability not recognized in Missouri. After the court granted judgment in favor of FlightSafety, Dallas Airmotive appeals. We affirm.

## Background

The aircraft pilot held an FAA commercial pilot certificate and FAA-certified flight instructor certificate. While he had extensive experience as a pilot, he had no experience in operating a turboprop aircraft prior to attending a course offered by FlightSafety nine days before the crash. FlightSafety is a certified commercial aviation training center. The training included a ground school and ten hours in a simulator designed to replicate the actual performance and handling of a turboprop aircraft.

The petition alleged that a component part on the left engine failed, causing the pilot to shut down the left engine, ultimately causing the pilot to lose control of the aircraft. It was further alleged that the arm extension for the propeller governor on the left engine broke, thereby preventing the pilot from being able to feather the propeller. "Feathering" means to turn the blade of the propeller approximately parallel with the line of flight, thus equalizing the pressure on the face and back of the blade and stopping the propeller from turning or "windmilling." Feathering is necessary because when the propeller is not being driven by the engine during flight, it windmills and creates a tremendous drag on that non-operating engine. During the training, the FlightSafety instructor intentionally failed one of the two engines in the simulator during the takeoff phase in order to attempt to allow the pilot to experience the drag on an aircraft in flight with one engine shut down until the propeller feathers. A FlightSafety manager testified that when an engine is flamed out intentionally in the simulator, the simulator will not give the pilot the high-drag forces associated with an unfeathered propeller. In the simulator, the pilot experiences unrealistically low feedback as to the drag forces involved and their effect on the airplane's handling. This was known to FlightSafety before the pilot underwent his training. The training program and simulator used by FlightSafety were both certified and approved by the FAA.

Dallas Airmotive was the sole contributor of funds to the settlement compensating the plaintiffs for their damages. In the settlement agreements, Dallas Airmotive attempted to preserve a right of contribution against FlightSafety.[1] Thereafter, Dallas Airmotive filed cross-claims against FlightSafety for contribution, in-

---

1. The issue of whether or not Dallas Airmotive's rights of contribution were preserved was also briefed by the parties. In view of the disposition we reach herein, we need not address that issue.

corporating by reference the plaintiff surviving family members' claims for negligence and breach of warranty. The trial court granted FlightSafety's motion for summary judgment on the negligence and breach of warranty claims. Dallas Airmotive now appeals.

## Standard of Review

■ Appellate review of a summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). This court's criteria for ascertaining the propriety of summary judgment are the same as those that the trial court uses in determining whether to grant the motion. *Id.* Summary judgment is appropriate where the moving party establishes that no genuine issue of material fact exists and the party has a right to judgment as a matter of law. *Id.* at 378.

## Analysis

The petition alleges that FlightSafety failed to alert and warn the pilot of the known dangers of shutting down an engine in flight without the ability to properly feather the propeller. It further alleges that FlightSafety knew its simulator did not accurately replicate the extreme drag experienced and that it nonetheless continued to use the simulator. Plaintiffs maintain that their claim is one of negligence. The issue before the court is whether plaintiffs have instead asserted a claim of educational malpractice.

■ In order to recover for negligence, a plaintiff must prove the existence of a duty on the part of the defendant to protect the plaintiff from injury, the defendant's failure to perform that duty, and an injury proximately caused by the failure to perform the duty owed. *Bunker v. Ass'n of Mo. Elec. Coops.*, 839 S.W.2d 608, 611 (Mo.App.1992). Whether a duty exists is a matter of law and question for the courts to decide. *Id.*

The judicial determination of the existence of a duty rests on sound public policy as derived from a calculus of factors: among them, the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; moral blame society attaches to the conduct; the prevention of future harm; consideration of cost and ability to spread the risk of loss; the economic burden upon the actor and the community and others.

*Id.*

Missouri, along with most other jurisdictions that have considered the issue, has found that educational malpractice claims are not cognizable because there is no duty. *See, e.g., Bunker*, 839 S.W.2d at 610–11 (claim against trade association that provided safety training to employees of members). Educational malpractice claims tend to fall into one of three general categories: (1) the student alleges that the school negligently failed to provide him with adequate skills; (2) the student alleges that the school negligently diagnosed or failed to diagnose his learning or mental disabilities; or (3) the student alleges that the school negligently supervised his training. *See Moore v. Vanderloo*, 386 N.W.2d 108, 113 (Iowa 1986); *see also* Johnny C. Parker, *Educational Malpractice: A Tort Is Born*, 39 Clev. St. L.Rev. 301, 303 (1991). While the student is usually the person asserting the claim, third parties have sometimes attempted to assert educational malpractice claims by contending that they were injured by the school's negligent teaching of the student. *Moss Rehab. v. White*, 692 A.2d 902, 905 (Del. 1997). Actions of such alleged malpractice have been brought against public schools, institutions of higher learning, or private

proprietary and trade schools. *Page v. Klein Tools, Inc.*, 461 Mich. 703, 610 N.W.2d 900, 905 (2000).

A claim of educational malpractice generally entails the review of the instructional materials and pedagogical method employed. *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 472 (Minn.Ct.App.1999). It involves "a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies that enter into the consideration of whether the method of instruction and choice of [teaching aids] was appropriate, or preferable." *Id.* The courts "have refused to become the 'overseers of both the day-to-day operation of [the] educational process as well as the formulation of its governing policies.'" *Id.* Thus, they have found a lack of duty and held the claim of educational malpractice to be non-cognizable.

■ "In educational malpractice cases, a plaintiff sues his or her academic institution for *tortiously* failing to provide adequate educational services." *Vogel v. Maimonides Acad. of W. Conn., Inc.*, 58 Conn.App. 624, 754 A.2d 824, 827 n. 7 (2000). If a negligence claim raises questions concerning the reasonableness of the educator's conduct in providing educational services, then the claim is one of educational malpractice. *Christensen v. S. Normal Sch.*, 790 So.2d 252, 255 (Ala. 2001). Similarly, if the claim requires "an analysis of the quality of education received and in making that analysis the fact-finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct," then the claim is one of educational malpractice. *Id.* If the duty alleged to have been breached is the duty to educate effectively, the claim is one of educational malpractice. *Vogel,* 754 A.2d at 828. A claim that educational services provided were inadequate, substandard, or ineffective consti-

tutes a claim of educational malpractice. *Lawrence v. Lorain County Cmty. Coll.,* 127 Ohio App.3d 546, 713 N.E.2d 478, 480 (1998); *Alsides,* 592 N.W.2d at 473. Where the court is asked to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution, the claim is one of educational malpractice. *Andre v. Pace Univ.,* 170 Misc.2d 893, 655 N.Y.S.2d 777, 779 (N.Y.App.Div.1996).

■ Dallas Airmotive argues that it has not asserted a claim of educational malpractice. Instead, it states that the duty alleged to have been breached is the common-law duty not to cause physical injury by negligent conduct. It states that its claim is a "very precise negligence claim" based on a failure "of FlightSafety to alert and warn ... of the known dangers of shutting down an engine in flight without the ability to properly feather the propeller." It further asserts that FlightSafety knew its FAA–approved simulator did not accurately replicate the extreme drag experienced and that it nonetheless continued to use the simulator. Dallas Airmotive states that FlightSafety's curriculum "inadequately prepared" the pilot to handle the situation.

■ The distinction between an educational malpractice claim and a cognizable negligence claim arising in the educational context may not always be clear. The duty not to cause physical injury by negligent conduct "does not disappear when the negligent conduct occurs in an educational setting." *Vogel,* 754 A.2d at 828. The duty pertains to an educator or supervisor using reasonable care so as not to cause physical injury to a trainee during the course of instruction or supervision. *Id.* For instance, a woodworking shop instructor has a duty "to exercise reasonable care not only to instruct and warn students in the safe and proper operation of the

machines provided for their use but also to furnish and have available such appliances, if any, as would be reasonably necessary for the safe and proper use of the machines." *Kirchner v. Yale Univ.*, 150 Conn. 623, 192 A.2d 641, 643 (1963). The duty recognized was the duty owed by an educator not to cause physical injury by negligent conduct *in the course* of instruction. *Id.* Another example is the duty of a medical school residency program to train a resident in needle safety and supervise him, in the course of his instruction, while performing a procedure involving needles. *Doe v. Yale Univ.*, 252 Conn. 641, 748 A.2d 834, 846–50 (2000). It is the duty of an educator or supervisor to use reasonable care so as not to cause physical injury to a trainee during the course of instruction or supervision. *Id.*

This is not a case of an injury during the instruction. It is not a case in which an improperly maintained flight simulator malfunctioned, causing an electrical shock injury to the student. Nor does the case involve failure to properly maintain the premises of the instruction, causing a student to fall and suffer injury. This is a case about the quality of the instruction.

Dallas Airmotive claims FlightSafety's method of instruction, the simulator, is unrealistic and inadequate. It alleges that FlightSafety failed to teach the pilot that which he needed to know in the situation leading to the crash. Dallas Airmotive's emphasis on the fact that FlightSafety was aware of the deficiencies in its training program does not change the nature of its complaint. Dallas Airmotive's claims "encompass the traditional aspects of education," and thus attack the quality of the instruction. *See Moss Rehab.*, 692 A.2d at 905.

Alternatively, Dallas Airmotive argues that even if its claim is one of educational malpractice, it should not be prohibited.

It asserts that the public policy reasons underlying the refusal to recognize a claim of educational malpractice are not implicated in the case *sub judice*. Courts have identified four policy grounds for refusing to recognize educational malpractice claims:

(1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will "embroil the courts into overseeing the day-to-day operations of schools."

*Page*, 610 N.W.2d at 903. We believe that such public policy considerations apply to plaintiffs' claims in this case.

For instance, many factors contribute to the quality of a student's education and the quality of his later performance. The recognition of liability, of course, would be a great invitation to speculation as to causation. *See Sellers v. Sch. Bd. of the City of Manassas*, 960 F.Supp. 1006, 1014 & n. 36 (E.D.Va.1997). Public policy also suggests that schools, and their regulating, accrediting, and certifying agencies, not courts, need to make curriculum decisions. *See Moore*, 386 N.W.2d at 115.

Dallas Airmotive's claims are not cognizable as there is no legal duty upon which to premise the claim of negligence. This court remains unpersuaded that the policy rationales do not apply here. Thus, summary judgment in FlightSafety's favor was appropriate as the claims were not cognizable. Given this conclusion, it is unnecessary to address the other contentions raised by plaintiffs on appeal.

## Conclusion

The judgment is affirmed.

All concur.