John DUTHOY, Appellant,

v.

Cameron DUTHOY, Gerald Kangas, and Family Support Division Child Support Enforcement, Respondents.

No. WD 74183.

Missouri Court of Appeals, Western District.

June 26, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2012.

Chad N. Pfister, Warrensburg, MO, for appellant.

Justin D. Mettlen, KCMO, Cameron Duthoy, Pro Se.

Gerald Kangas, Pro Se, Warrensburg, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, CINDY L. MARTIN, Judge, and KENNETH R. GARRETT, SP. J.

LISA WHITE HARDWICK, Chief Judge.

John Duthoy appeals the circuit court's grant of summary judgment in favor of the Family Support Division ("Division") on his petition for declaratory judgment. Duthoy sought a declaration either that his son was emancipated under Minnesota law at age eighteen or that noncompliance with the Uniform Interstate Family Support Act ("UIFSA") prohibited the Division from taking any child support enforcement action against him. On appeal, Duthoy contends the circuit court erred in determining that, under Minnesota law, his son was not emancipated until he graduated from high school at age nineteen. Duthoy also contends the circuit court erred in not vacating any of his alleged child support arrearage because, under UIFSA, the failure to register the Minnesota support order prohibited the Division from attributing any arrearage to him. Lastly, Duthoy asserts the circuit court improperly modified the Minnesota support order. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Cameron Duthoy was born on July 10, 1991, to Duthoy and Suzanne Stokke. In June 1992, the District Court of Lyon County, Minnesota determined Duthoy was Cameron's father and ordered Duthoy to pay child support for Cameron "until the child reaches age eighteen (18) or age twenty (20) if still attending secondary school, is emancipated, is adopted, dies or until further order of this court." In July 1995, the Lyon County District Court modified the child support order. The court entered a new order ("Minnesota support order"), which provided that child support continue until Cameron:

a. Turns 18 and/or graduates from high school;

b. Reaches 20 years of age and is still attending high school;

c. Is emancipated;

d. Until further order of the Court; or

e. Marries or dies.

The Lincoln, Lyon, and Murray Human Services Agency ("Lyon County agency") tracked Duthoy's child support obligation.

Cameron relocated with Stokke to Florida and, in January 2009, the Minnesota support order was registered in the Twentieth Judicial Circuit for Lee County, Florida. Thereafter, both the Lyon County agency and Lee County Circuit Clerk tracked Duthoy's child support obligation.

In June 2009, Cameron relocated to Warrensburg to live with his maternal grandfather, Gerald Kangas, and attend high school in Missouri. Court approval for this custodial arrangement was neither sought nor obtained, and no court ordered Duthoy to make child support payments to Kangas. The Minnesota support order was not registered as a foreign judgment in Missouri.

Cameron turned eighteen years old on July 10, 2009. In October 2009, Kangas applied for and began receiving Temporary Assistance for Needy Families ("TANF") benefits for Cameron while he was still attending high school. Between September 2009 and April 2010, no agency in Missouri or in any other state charged with the enforcement of child support orders contacted Duthoy or took action against him regarding the Minnesota support order. In April 2010, however, Duthoy received a letter from the Division notifying him that it was seeking to enforce the terms of the Minnesota support order.

On May 20, 2010, Duthoy filed a petition for declaratory judgment requesting a declaration that Cameron was emancipated when he turned eighteen on July 10, 2009,

and that any child support arrearage be eliminated. In the alternative, Duthoy sought a declaration that Cameron and the Division failed to comply with UIFSA's requirements and, therefore, the Division's enforcement actions were improper. At Duthoy's request, the court entered a stay enjoining the Division from taking any further action with regard to the Minnesota support order.

Both Duthoy and the Division filed motions for summary judgment. Meanwhile, Cameron graduated from high school in May 2011. After hearing arguments on the parties' competing summary judgment motions, the circuit court determined that, under Minnesota law and the Minnesota support order, Cameron became emancipated not when he turned eighteen on July 10, 2009, but, rather, when he graduated from high school in May 2011, at age nineteen. The court also concluded that registration of the Minnesota support order was not initially necessary to enforce it in Missouri or to assign the child support to the State. Therefore, the court granted the Division's summary judgment motion and denied Duthoy's summary judgment motion. Duthoy appeals.

## STANDARD OF REVIEW

Appellate review of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 380. We view the record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all reasonable inferences. *Id.* at 376. We may affirm the circuit court's grant of summary judgment under any theory that is supported by the record. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 120 (Mo. banc 2010).

## ANALYSIS

In Point I, Duthoy challenges the circuit court's determination as to when Cameron became emancipated. Pursuant to UIFSA, Minnesota law governs the date of Cameron's emancipation because Minnesota issued the child support order. § 454.956, RSMo 2000.[1] Under Minnesota law, unless a court order states otherwise, a child support obligation terminates automatically and without any action by the obligor "upon the emancipation of the child as provided under section 518A.26, subdivision 5." MINN.STAT. § 518A.39, subd. 5(a) (2010). The cross-referenced statute, Minnesota Statutes Section 518A.26, subdivision 5 (2010), defines a "child" as "an individual under 18 years of age, an individual under age 20 who is still attending secondary school, or an individual who, by reason of physical or mental condition, is incapable of self-support." Consistent with these statutes, the Minnesota support order provided that Duthoy owed child support until Cameron reached age eighteen or age twenty if he was still attending high school, was emancipated, was adopted, married or died, or until further order of the court.

Duthoy argues that Cameron was emancipated on his eighteenth birthday. He interprets the language of the Minnesota statutes to mean that a child is automatically emancipated upon turning eighteen, even if the child is still attending secondary school, and the obligee must take action, before the child's eighteenth birthday,

1. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2011, unless otherwise indicated.

to establish facts to continue the support obligation past that time.

Duthoy confuses the concept of automatic termination of support upon emancipation with automatic emancipation. There is no question that, pursuant to Minnesota Statutes Section 518A.39, Duthoy's child support obligation automatically terminated upon Cameron's emancipation. Neither Section 518A.39 nor Section 518A.26, however, provides that a child is automatically emancipated merely because the child no longer fits within one particular definition of a "child" in Section 518A.26, subdivision 5.

Indeed, Minnesota caselaw holds to the contrary. In *Maki v. Hansen,* the appeals court found that the implication of the plain language of Section 518A.26, subdivision 5, and Section 518A.39, subdivision 5(a), was that an individual who falls under *any* of the statutory definitions of a "child" continues to be unemancipated for support purposes. 694 N.W.2d 78, 83 (Minn.App. 2005).[2] See also *Jarvela v. Burke,* 678 N.W.2d 68, 72 (Minn.App.2004). The child does not automatically lose all rights to continued parental support if he no longer fits within one particular statutory definition of a "child." See *Maki,* 694 N.W.2d at 84. So long as the individual fits within any of the remaining statutory definitions of a "child," he is unemancipated and entitled to continuing support. See *id.* Du-

thoy's contention that a child is automatically emancipated upon turning eighteen and that the obligee must take action, before the child's eighteenth birthday, to establish facts that the child fits within one of the other statutory definitions of a "child" is not supported by the Minnesota statutes or caselaw.[3]

Nevertheless, Duthoy argues that the Lyon County agency "terminated" the Minnesota support order upon Cameron's turning eighteen. Duthoy bases his argument on the following language in an affidavit from a Lyon County child support officer:

The State of Minnesota maintained the child support records until such time [as] we were no longer able to enforce our order. This Minnesota case is closed as the child turned 18, and was no longer residing with the Obligee and no documentation of school enrollment was provided. Ms. Stokke did advise Minnesota that the child, Cameron[,] moved to Missouri to reside with the grandparents and was to attend school there as he did not graduate from Florida, however[,] Minnesota could no longer service this case as no parties were in Minnesota and there is/was no order redirecting the support to an eligible caretaker. Minnesota no longer has jurisdiction of this matter to order a redirection.

2. *Maki* cites Minnesota Statutes Sections 518.54, subdivision 2, and 518.64, subdivision 4a(a), the predecessor statutes to Minnesota Statutes Sections 518A.26, subdivision 5, and 518A.39, subdivision 5(a), respectively, before they were renumbered.

3. In support of his claim, Duthoy cites *Schultz v. Schultz,* 495 N.W.2d 463, 465–66 (Minn.App.1993), a case in which an obligee sought to extend the support obligation past age eighteen on the basis that the child's physical or mental condition made her unable to support herself. The court in *Schultz* held

that extending the support obligation on this basis was in the nature of a modification of the support order that required notice to the obligor and additional court proceedings to establish its validity. *Id. Schultz* is distinguishable from our case, however, because the support order in *Schultz* did not contemplate extending support on the basis of the child's physical or mental condition. *Id.* at 464. Here, the Minnesota support order clearly provided for extending child support past Cameron's eighteenth birthday so long as he was still attending high school.

Contrary to Duthoy's assertion, the language of this letter does not indicate that Minnesota "terminated" the court's support order. Rather, it indicates that Minnesota merely closed its agency enforcement case. Duthoy offers no authority for the proposition that an agency has the power to terminate a court order.

There is no dispute that Cameron was still attending high school when he turned eighteen and did not graduate from high school until May 2011, at age nineteen. Pursuant to Minnesota statutes and the Minnesota support order, Cameron was still a "child" entitled to support until he turned twenty years old, as long as he was still attending high school. Therefore, the circuit court correctly found that Cameron became emancipated on the date of his high school graduation. Point I is denied.

■ In Point II, Duthoy contends the circuit court erred in not vacating any of his alleged child support arrearage because, under UIFSA, the failure to register the Minnesota support order prohibited the Division from enforcing the order, including attributing any arrearage to him. He argues the Division was required to register the order before sending the April 2010 letter advising him that it was seeking to enforce the Minnesota support order. We disagree.

Registration of a foreign child support order is not initially necessary to enforce the order in Missouri. Section 454.946(b) provides that, after a support enforcement agency receives a request to enforce a support order, the agency, "without initially seeking to register the order, shall consider and, if appropriate, use any administrative procedure authorized by the law of this state to enforce a support order." If the obligor of the support order "does not

contest administrative enforcement, the order need not be registered." *Id.* However, "[i]f the obligor contests the validity or administrative enforcement of the order, the support enforcement agency shall register the order pursuant to sections 454.850 to 454.997."

Pursuant to this statute, the Division did not need to register the Minnesota support order before sending Duthoy the April 2010 letter.[4] Upon receipt of the letter, Duthoy chose to contest the validity of the Minnesota support order by filing a declaratory judgment action in the circuit court. Had Duthoy chosen to pursue relief through the Division, then the Division would have been required to register the order. After he filed his declaratory judgment petition, Duthoy prevented the Division from registering the order by obtaining a stay, which enjoined the Division from taking any further action on the Minnesota support order during the pendency of both the declaratory judgment proceeding and this appeal.

Because the Division was not required to register the Minnesota support order before sending Duthoy the April 2010 letter, its failure to register the order is not a valid basis for vacating Duthoy's alleged child support arrearage. The circuit court properly denied Duthoy's request for relief on this ground. Point II is denied.

■ In Point III, Duthoy contends the circuit court erred in finding Cameron's maternal grandfather, Kangas, to be the obligee of the child support obligation. In its judgment, the court determined that Kangas became the obligee and assignor of the child support order when he applied for and received TANF benefits from the State of Missouri in October 2009. The court further found that the child support

---

4. Because it does not affect our ruling on this point, we will assume, without deciding, that the Division's April 2010 letter constituted an enforcement action.

obligation was properly assigned to the State by operation of law pursuant to Section 454.455.1. Duthoy argues the court's identifying Kangas as the obligee of the Minnesota support order constitutes a modification of the child support order that is not permitted under Minnesota law or UIFSA.

Section 454.455.1 provides for the assignment of a child support obligation to the State where the child's legal custodian and obligee relinquishes physical custody to a caretaker relative and the caretaker relative applies for and receives TANF benefits:

> In any case wherein an order for child support has been entered and the legal custodian and obligee pursuant to the order relinquishes physical custody of the child to a caretaker relative without obtaining a modification of legal custody, and the caretaker relative makes an assignment of support rights to the division of family services in order to receive aid to families with dependent children benefits, the relinquishment and the assignment, by operation of law, shall transfer the child support obligation pursuant to the order to the division in behalf of the state.

This is exactly what happened in this case. Stokke relinquished physical custody of Cameron to Kangas in June 2009 without obtaining a modification of legal custody and signed a letter voluntarily redirecting the child support payments to Kangas. In October 2009, Kangas made an assignment of support rights to the Division in order to receive TANF benefits for Cameron. While Duthoy may be correct that, under Section 454.455.1, Kangas did not technically become the "obligee" of the support obligation, this misnomer does not change the propriety of the assignment of support rights to the Division. As Cameron's caretaker relative, Kangas properly assigned support rights to the Division to receive TANF benefits and such assignment, by operation of law, transferred the support obligation to the State. *Id.* No modification of the Minnesota support order occurred. Point III is denied.

### CONCLUSION

We affirm the circuit court's judgment.

All Concur.