Joseph LUCERO, Appellant,

v.

The CURATORS OF the UNIVERSITY
OF MISSOURI, Respondent.

No. WD 74768.

Missouri Court of Appeals,
Western District.

Feb. 13, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied March
26, 2013.

George S. Smith, for Appellant.

Paul R. Maguffee, Columbia, MO, for Respondent.

Before Division Three: THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Joseph Lucero appeals from a judgment entered in the Circuit Court of Boone County granting summary judgment in favor of the Curators of the University of Missouri ("Respondent") in an action filed by Appellant. Appellant sought damages for Respondent's alleged breach of contract and breach of the implied covenant of good faith and fair dealing and also prayed for a declaratory judgment setting forth the rights and obligations that exist among the parties with regard to Respondent's faculty irresponsibility proceedings. For the following reasons, the judgment is affirmed.

In 2006, Appellant applied and was accepted to attend the University of Missouri School of Law. In 2007, during the fall semester of his second year, Appellant enrolled in two classes taught by Professor Pamela Smith. Appellant began to have problems with Professor Smith after she canceled several classes and ultimately rescheduled the time and days on which those two classes would meet.

Later in the semester, Professor Smith sent an email instructing the class on an

assignment that required the class to write a research memorandum advocating one side in a high profile trademark lawsuit. In addition to the memorandum, each student would also have to present a topic that Professor Smith assigned to them regarding the same lawsuit. An email exchange regarding the assignment then ensued between Appellant and Professor Smith.

The emails from Appellant questioned the restrictions Professor Smith placed on the assignment, such as the prohibition on outside research and the subject of the assignment, which involved a trademark dispute between Paris Hilton and Hallmark Cards. Professor Smith's responses to Appellant's emails indicated she believed Appellant was unprepared for his class presentation and failed to comply with the prohibition against outside research, which she suggested resulted in an honor code violation.

Professor Smith forwarded Appellant's emails to both the dean of the law school ("the Dean") and the associate dean for academic affairs at the law school. In her email to the deans, Professor Smith indicated that she found Appellant's emails to be threatening and did not feel safe with him in her class or in the law school. The email further requested that Appellant be removed from her classes, that an honor code investigation be opened, and that campus police be notified.

Following the emails, Professor Smith initiated an honor code violation action against Appellant for conducting outside research with respect to the class assignment. Professor Smith also brought subsequent honor code violations against Appellant with regard to other class assignments. All of the honor code violation actions initiated by Professor Smith were decided in favor of Appellant.

Professor Smith also filed a complaint with campus police regarding the nature of the emails she received from Appellant. Campus police investigated the matter but determined no further action was necessary. Appellant was never arrested or warned by campus police in response to Professor Smith's complaint.

Although Appellant was not removed from Professor Smith's classes by the Dean, he voluntarily withdrew from both classes prior to the end of the semester. On December 11, 2007, Appellant withdrew from the law school after finishing his exams.

Prior to withdrawing, however, Appellant filed a charge of faculty irresponsibility against Professor Smith with the university on November 15, 2007. On March 13, 2008, Appellant's lawyer requested an update as to the status of the faculty irresponsibility charge Appellant had filed against Professor Smith. On March 25, 2008, the Dean responded that the charge had been deemed abandoned and forfeited. After further inquiry from Appellant's counsel in the following months, the university's counsel informed Appellant that it had been recommended that the faculty irresponsibility proceedings be stayed until the civil proceedings between Appellant and Professor Smith were resolved.[1]

On October 14, 2008, Appellant filed a petition for damages in the Circuit Court of Boone County against Respondent. Appellant subsequently filed an amended petition for damages and declaratory judgment that alleged claims of breach of con-

1. On February 19, 2008, Professor Smith filed a civil suit against Appellant in the Circuit Court of Boone County. The suit was dismissed without prejudice in 2009. Professor Smith also filed a complaint against Appellant with local law enforcement and filed an ex parte order against Appellant in February of 2008. These complaints were later dismissed.

tract and breach of the implied covenant of good faith and fair dealing and requested declaratory judgment setting forth the parties' rights and obligations under the faculty irresponsibility procedures set forth in Respondent's Faculty Bylaws.

On July 13, 2011, Respondent filed its motion for summary judgment. In its motion, Respondent asserted that Appellant could not sustain a claim for breach of contract or breach of the implied covenant of good faith and fair dealing. More specifically, Respondent asserted that Appellant failed to identify any specific and discrete promises Respondent breached for purposes of establishing a viable breach of contract claim between Appellant, as a student, and Respondent, as a university. The motion further alleged that Appellant lacked standing to request a declaratory judgment regarding Respondent's faculty irresponsibility procedures.

On December 1, 2011, the circuit court entered a judgment sustaining Respondent's motion for summary judgment as to all counts alleged in Appellant's amended petition. The judgment was silent as to the circuit court's grounds for granting Respondent's summary judgment motion. This appeal followed.

Appellant raises seven points on appeal. Because points III and VII are dispositive of this appeal, we address those points first.

■ In his third point, Appellant asserts that the trial court erred in sustaining Respondent's motion for summary judgment with respect to his breach of contract claim because Appellant alleged specific and discrete promises that were breached by Respondent for which Respondent can be held liable for breach of contract. "Our review of a grant of summary judgment is

essentially *de novo.*" *Sherf v. Koster,* 371 S.W.3d 903, 905 (Mo.App. W.D.2012). "To prevail on a motion for summary judgment, the movant must show that there is no dispute of material fact and that he is entitled to judgment as a matter of law." *Id.* (internal quotation omitted). We review "the record in the light most favorable to the party against whom judgment was entered." *Harpagon MO, LLC v. Bosch,* 370 S.W.3d 579, 581–82 (Mo. banc 2012) (internal quotation omitted). "We may affirm the circuit court's grant of summary judgment under any theory that is supported by the record." *Duthoy v. Duthoy,* 385 S.W.3d 460, 462 (Mo.App. W.D.2012). "When the trial court's order does not state the reasons for its grant of summary judgment, we presume that it is on the grounds specified in the movant's motion for summary judgment." *Sherf,* 371 S.W.3d at 905.

While other jurisdictions have found a contractual relationship exists between a student and a university, *see Gally v. Columbia Univ.,* 22 F.Supp.2d 199, 206 (S.D.N.Y.1998) (explaining that New York courts have suggested that when "a student enrolls at a university, an implied contract arises"); *Guckenberger v. Boston Univ.,* 957 F.Supp. 306, 317 (D.Mass.1997) (stating that "[u]niversities are capable of forming legally cognizable contractual relationships with their students"); *Behrend v. State,* 55 Ohio App.2d 135, 379 N.E.2d 617, 620 (1977) (stating that "[g]enerally it may be stated that when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature"), the parties have not cited, nor has our research uncovered, any case law in Missouri that expressly finds the existence of a contractual relationship between a stu-

dent and a university.[2] However, even if we were to assume that the relationship between Appellant and Respondent was contractual in nature, Appellant has not alleged or established any specific promise or obligation that Respondent breached to form the basis of his breach of contract claim.

■ "In order to make a submissible case of breach of contract, the complaining party must establish the existence of a valid contract, *the rights of plaintiff and obligations of defendant under the contract,* a breach by defendant, and damages resulting from the breach." *C. Am. Health Sciences Univ., Belize Med. College v. Norouzian,* 236 S.W.3d 69, 84 (Mo.App. W.D.2007) (emphasis added) (internal citation omitted). Missouri law, therefore, requires Appellant to identify which rights or obligations Respondent breached under the contract in order to establish a claim for breach of contract. This requirement is consistent with case law from other jurisdictions addressing contractual liability between students and universities.

■ As both parties recognize, other jurisdictions have held that "an educational institution's brochures, policy manuals and other advertisements may form the basis of a legally cognizable contractual relationship between the institution and its students." *Bittle v. Oklahoma City Univ.,* 6 P.3d 509, 514 (Okla.Ct.App.2000). Nevertheless, "[n]ot every dispute between a student and a university is amenable to a breach of contract claim." *Gally,* 22 F.Supp.2d at 206. Rather, in order to assert a breach of contract claim against a university, a student plaintiff must "point to an identifiable contractual promise that

the [university] defendant failed to honor." *Miller v. Loyola Univ. of New Orleans,* 829 So.2d 1057, 1060 (La.Ct.App.2002) (quoting *Ross v. Creighton Univ.,* 957 F.2d 410, 416–17 (7th Cir.1992)); *see also Gally,* 22 F.Supp.2d at 207; *Bittle,* 6 P.3d at 515.

In its motion for summary judgment, Respondent averred that Appellant failed to allege or establish any specific or discrete promises that the university had breached. On appeal, Appellant identifies several portions of the Collected Rules and Regulations that he believes constitute discrete obligations that properly form the basis of contractual liability between Appellant and Respondent. These provisions identified by Appellant can be categorized as addressing either (1) Respondent's failure to ensure a proper learning atmosphere or (2) Respondent's failure to adhere to university procedures and schedules.

With regard to policies addressing a proper learning atmosphere, Appellant relies upon the following portions from § 330.080 of Respondent's Collected Rules and Regulations:

1. The University of Missouri is committed to providing a positive work and learning environment where all individuals are treated fairly and with respect, regardless of their status. Intimidation and harassment have no place in a university community. To honor the dignity and inherent worth of every individual—student, employee, or applicant for employment or admission—is a goal to which every member of the university community should aspire and to which officials of the university

---

**2.** Appellant argues that *Central America Health Sciences University, Belize Medical College v. Norouzian,* 236 S.W.3d 69, 83 (Mo. App. W.D.2007), stands for the proposition that Missouri recognizes contractual relationships exist between a student and a university. To the contrary, *Norouzian* merely holds that a specific written agreement between the university and student calling for a reduction in tuition was enforceable. *Id.* at 83–84.

should direct attention and resources.

2. With respect to students, it is the university's special responsibility to provide a positive climate in which students can learn. Chancellors are expected to provide educational programs and otherwise direct resources to creative and serious measures designed to improve interpersonal relationships, to help develop healthy attitudes toward different kinds of people, and to foster a climate in which students are treated as individuals rather than as members of a particular category of people.

Appellant also identifies Subsection C of the Faculty Bylaws, which provides, in pertinent part:

**As a teacher,** the Professor encourages the free pursuit of learning in his/her students. He/she holds before them the best scholarly standards of his/her discipline. He/she demonstrates respect for the student as an individual, and adheres to his/her proper role as intellectual guide and counselor. He/she makes every reasonable effort to foster honest academic conduct and to assure that his/her evaluation of students reflects their true merit. He/she respects the confidential nature of the relationship between professor and student. He/she avoids any exploitation of students for his/her private advantage and acknowledges significant assistance from them. He/she protects their academic freedom.

Appellant contends that these identified provisions represent specific promises breached by Respondent with respect to how the university handled the situation between him and Professor Smith.

As Respondent points out, however, these portions of the Collected Rules and Regulations and Faculty Bylaws do not constitute specific promises, but rather are aspirational in nature. The sections identified by Appellant amount to general statements that Respondent, as a university, seeks to achieve in maintaining a positive work and learning environment. Such statements, therefore, cannot constitute the basis for a breach of contract claim.

Other jurisdictions addressing similar policies from other universities have refused to recognize such provisions as specific and identifiable contractual promises. In *Gally*, a dental student brought a breach of contract action against Columbia University on the basis that the university breached its promise to abide by its Code of Conduct and to prepare graduates with an understanding of the social, economic, societal and ethical aspects of the profession. 22 F.Supp.2d at 202–03. The university's Code of Conduct provided that the faculty and administration had a responsibility to "attempt to foster a professional atmosphere, to dissuade unethical conduct and to deal with it appropriately if it does arise." *Id.* at 202–03 n. 1. The university's code further provided that the faculty and administration had a responsibility to ensure that "[a]ll students ... receive fair and equal treatment." *Id.* In dismissing the dental student's claim, the court stated that "the general promises about ethical standards which plaintiff now points to are far different from the types of specific promises which have led to valid breach of contract claims against universities." *Id.* at 207. The court further emphasized that the alleged promises were "subject to neither quantification nor objective evaluation." *Id.*

Likewise, the court in *Ward v. New York University*, No. 99 CIV. 8733(RCC), 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000), found general promises regarding a university's learning environment failed to constitute specific promises for purposes of

a breach of contract claim. In *Ward*, the student plaintiff asserted that the university promised (1) "to provide a great learning for adult students," (2) "to respect adult students and treat them with respect," (3) "to not discriminate against adult students," (4) "to provide supervision and teaching by honest and unbiased instructors," and (5) "to provide and to follow guidelines for student treatment." *Id.* at *4. In dismissing the plaintiff's claim, the court stated that the alleged promises identified by the plaintiff were "more akin to general statements of policy" and were "broad pronouncements of the University's compliance with anti-discrimination laws, promising ethical treatment of all students." *Id.* Thus, the court concluded that the alleged promises could not "form the basis of a breach of contract claim." *Id.*

Similar to the alleged promises in *Gally* and *Ward*, the rules and regulations identified by Appellant do not amount to specific, discrete promises made by Respondent. The identified rules, regulations, and bylaws are more akin to general policy statements expressing Respondent's aspiration to provide a positive work and learning environment. Such provisions do not represent objective or quantifiable promises made by Respondent; rather, they are merely general promises pronouncing Respondent's intent to maintain an ethical environment for its faculty and students.

Thus, the provisions identified by Appellant regarding a proper learning atmosphere cannot form the basis of a breach of contract claim.

 The remaining Collected Rules and Regulations provisions cited by Appellant regard Respondent's procedures for addressing faculty irresponsibility charges. These procedures are set forth in Subsection L of the Faculty Bylaws[3] and outline the general internal process by which Respondent is to handle allegations of faculty irresponsibility. Subsection L provides that a charge of faculty irresponsibility "may be brought against a Faculty member or teacher by a person or group of persons associated with the University, such as a student. . . ."

As a student, Appellant filed a charge of faculty irresponsibility against Professor Smith. Now on appeal, Appellant claims that Respondent failed to adhere to several of its established procedures in handling his faculty irresponsibility charge against Professor Smith.[4] In doing so, Appellant takes issue with the fact that Respondent deemed his charge of faculty irresponsibility forfeited and abandoned. Appellant also identifies several provisions in Subsection L that he believes represent specific and discrete promise Respondent breached with respect to his faculty irresponsibility

---

3. In his point relied on, Appellant makes reference to the Honor Code as constituting a specific and discrete promise for purposes of establishing his breach of contract claim against Respondent. Appellant, however, fails to make any specific references to the Honor Code or how Respondent breached specific provisions therein within his argument section. Therefore, we must deem such argument effectively abandoned. See *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 124 (Mo.App. W.D.2001) (explaining that "[a]rguments raised in the points relied on that are not supported by argument in the argument portion of the brief are deemed

abandoned and present nothing for appellate review").

4. Respondent asserts that Appellant lacks standing to allege a breach of contract claim based on provisions found in the Faculty Bylaws. Appellant contends that because the Faculty Bylaws are contained in the Collected Rules and Regulations, he has standing, as a former student, to rely upon such provisions. Although it is unclear whether Appellant has standing as either a party or third-party beneficiary to the Faculty Bylaws, such issue need not be decided for purposes of this appeal.

charge. Those identified provisions are found primarily in a section entitled "General Provisions," which provides, in pertinent part:

> The following guidelines and principles will be expected to characterize the monitoring of Faculty responsibility through all formal and informal proceedings:
>
> . . . .
>
> c. Protection of the accuser against recriminations when a charge is made in good faith.
>
> . . . .
>
> f. Promptness in conducting each step of the investigation, consistent with fairness in time allowed for preparation. Seven to fourteen days in which the University is in session are reasonable lower and upper limits for each action, with extensions possible for good cause.
>
> g. Assurance to all parties involved of adequate notification of meetings and scheduling at times and places convenient to the persons involved.

Appellant contends that had Respondent complied with these provisions, it might have prevented Professor Smith from harassing him with civil suits and filing "baseless" complaints with the police.

Contrary to Appellant's contention, however, Subsection L by its own terms establishes that it cannot form the basis for his breach of contract claim. In a section entitled "Basis for the Article," Subsection L provides that, based on "the principle that a Faculty should monitor its own members, [Subsection] L establishes appropriate procedures for dealing with cases of alleged violation of professional responsibility." Thus, the purpose for the faculty irresponsibility procedures is to allow the university to monitor its faculty.

With this purpose in mind, any intervention by the court would amount to judicial supervision of a university's internal procedures for monitoring its faculty. Generally, courts have refrained from recognizing educational malpractice claims, either in tort or contract, on the premise that "[u]niversities must be allowed the flexibility to manage themselves and correct their own mistakes." *Miller*, 829 So.2d at 1061. In refusing to recognize a claim for educational malpractice, this court emphasized that it is not our place to micromanage a university's daily operations. *See Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo.App. W.D.2008) (explaining that "courts have refused to become the overseers of both the day-to-day operation of the educational process as well as the formulation of its governing policies") (internal quotations omitted).

Appellant's breach of contract claim, with respect to Respondent's faculty irresponsibility procedures, essentially amounts to a claim that Respondent, as a university, failed to sufficiently comply with its established policies for monitoring its faculty. The claim, whether identified as one for breach of contract as Appellant argues, or perhaps more accurately as one sounding in tort, "raises questions concerning the reasonableness of the educator's conduct in providing educational services" and, as such, "is one of educational malpractice," which Missouri courts have recognized as a non-cognizable claim. *Id.* Appellant is effectively requesting the courts to supervise Respondent's internal procedures for monitoring the professional responsibility of its faculty.[5]

---

**5.** Appellant's intent for the courts to oversee Respondent's faculty irresponsibility procedures is more evident in his request for declaratory judgment. In Count III of his amended petition, Appellant requested the court to issue a declaratory judgment setting

In *Dallas Airmotive, Inc.*, this Court found, as a matter of public policy, that courts should not embroil themselves in overseeing the day-to-day operations of schools. *Id.* at 701. It logically follows, then, that the faculty irresponsibility procedures set out in Subsection L cannot form the basis for the breach of contract claim Appellant attempts to assert.

■ Finally, Appellant claims that the class schedules published by Respondent for the 2007 Fall Semester conveyed a specific and discrete promise that the classes therein would be held at their scheduled times and that Appellant would receive the stated hours of credit for the successful completion of those classes which he took.[6] Appellant, however, fails to provide or identify the published class schedule that he claims constitutes a specific and discrete promise made by Respondent. Thus, there is nothing in the record for this court to review to determine if the class schedule does, in fact, constitute a specific or discrete promise that forms the basis for Appellant's breach of contract claim.

Furthermore, in *Miller*, a Louisiana court refused to recognize a similar claim that the professor improperly changed the time of the course as a valid breach of contract claim against the university. 829 So.2d at 1061. In doing so, the court found that the rescheduling of a course time was not an instance in which the university has failed to provide a guaranteed service and, thus, failed to constitute a situation in which contractual liability existed between the student and the university. *Id.* Likewise, we cannot say that the published class schedule to which Appellant refers constitutes a specific and discrete promise for purposes of establishing contractual liability between Appellant and Respondent.

In summary, the provisions of the Collected Rules and Regulations, Faculty Bylaws, and the class schedule upon which Appellant relies do not constitute specific, discrete promises sufficient to form the basis for a breach of contract claim against Respondent. The trial court, therefore, did not err in granting Respondent's motion for summary judgment with respect to Appellant's breach of contract claim. Point denied.

■ In his seventh point, Appellant asserts that the trial court erred in sustaining Respondent's motion for summary judgment because Appellant met his burden of production and properly pled the elements of a breach of the implied covenant of good faith and fair dealing. "In Missouri, all contracts have an implied covenant of good faith and fair dealing." *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo.App. E.D.2012). To establish a breach of the covenant of good faith and fair dealing, the plaintiff has the burden to establish that the defendant "exercised a judgment conferred by the express terms of the agreement in such a

---

forth and determining the rights and obligations that exist among the parties pursuant to the faculty irresponsibility procedures set forth in Subsection L of the Faculty Bylaws and to "overturn the decision of the Dean of the Law School and the Provost to stay the Faculty Irresponsibility proceedings filed by [Appellant] against [Respondent's] faculty member [Professor] Smith." The trial court granted Respondent's motion for summary judgment with respect to Appellant's request for declaratory judgment. Appellant does not raise any issue on appeal regarding his request for declaratory judgment.

6. We note that Appellant voluntarily withdrew from Professor Smith's classes. Therefore, Appellant's argument regarding the amount of class credit he would have received for completing the courses are of little consequence.

manner as to evade the spirit of the transaction or so as to deny [the plaintiff] the expected benefit of the contract." *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 46 (Mo.App. W.D. 2002); *see also Glenn*, 360 S.W.3d at 877.

"The party claiming breach of the implied covenant of good faith must present substantial evidence that it has been violated." *Schell v. LifeMark Hosps. of Mo.*, 92 S.W.3d 222, 230 (Mo.App. W.D. 2002). The covenant of good faith "is not a general reasonableness requirement," nor "an overflowing cornucopia of wished-for legal duties." *Id.* (internal quotation omitted).

On appeal, Appellant contends that the trial court erroneously granted Respondent's motion for summary judgment because issues of material fact remain as to whether Respondent violated its duty of good faith and fair dealing. In particular, Appellant focuses his argument on the faculty irresponsibility procedures set forth in the Faculty Bylaws, which he asserts Respondent failed to comply with in bad faith.

Appellant relies primarily upon *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81 (2d Cir.2011), to assert that factual issues remain as to whether Respondent acted in bad faith in addressing his faculty irresponsibility charge against Professor Smith. In *Papelino*, a student was sexually harassed by a professor, who later initiated honor code proceedings against that student and his roommates. *Id.* at 86. At the honor code proceedings, the professor against whom the student had made allegations of sexual harassment presented the majority of evidence, which consisted primarily of statistical evidence comparing the student's grades to those of his roommates. *Id.* at 86–87. Eventually, the student was expelled from the university. *Id.* at 87. It was later revealed that even though an associate dean assured the student he had spoken with the professor and "taken care of" the matter, the college did nothing to investigate the student's claim of sexual harassment against the professor because the dean did not want the matter made public. *Id.* at 86. After state proceedings resulted in a court setting aside the college's determination that the student and his roommates had cheated, the plaintiffs brought a federal suit that included a breach of contract claim against the college. *Id.* at 84. The district court subsequently dismissed the plaintiffs' breach of contract claim on summary judgment. *Id.* at 85.

In reversing the district court's decision, the federal circuit court concluded that genuine issues exist for trial with respect to whether the university breached its implied duty of good faith by failing to investigate the student's complaint of sexual harassment, mishandling the Honor Code proceedings, and denying the student his diploma. *Id.* at 94. The court, however, emphasized that this was one of the rare cases in which it would be appropriate for a court to intervene. *Id.* In fact, the court explained that it felt it was appropriate to intervene, at least in part, because of previous intervention by the state court in setting aside the college's determination that the students had cheated. *Id.* Thus, the court ruled that the student and his roommates' breach of contract claim based upon the implied duty of good faith should not have been dismissed. *Id.*

Unlike the circumstances in *Papelino*, Appellant offers no evidence that Respondent acted in bad faith with respect to the faculty irresponsibility proceedings. The record establishes that Appellant filed his faculty irresponsibility charge against Professor Smith on November 15, 2007. Appellant withdrew from the university on December 11, 2007. On December 21,

2007, the Dean received an email from Professor Smith regarding the faculty irresponsibility charge. On February 19, 2008, Professor Smith filed a civil suit against Appellant. On March 25, 2008, the Dean informed Appellant that Appellant's faculty irresponsibility charge had been deemed abandoned and forfeited. When Appellant's attorney contested Respondent's ability to deem a charge abandoned, counsel for the university sent a letter indicating that the Dean had recommended to the university provost that the faculty irresponsibility charge be stayed until the civil proceedings between Appellant and Professor Smith had been resolved. In his deposition, the Dean testified that because Appellant was no longer a student, Professor Smith was no longer a teacher, and the two were involved in litigation in the court system, he believed it appropriate not to proceed administratively with the faculty irresponsibility charge to save faculty resources and let the parties resolve their disputes in the alternative forums they had chosen.

Appellant offers no contradictory evidence in the record. Instead, Appellant merely asserts that "the administration decided to drop the faculty irresponsibility charge against Professor Smith precisely because Professor Smith was engaging in the type of harassment that Appellant was complaining about." Such a conclusory

statement does not raise an issue of material fact, and Appellant fails to identify any unresolved material facts relating to his claim for violation of the duty of good faith and fair dealing. Accordingly, the trial court did not err in granting Respondent's motion for summary judgment with respect to Appellant's claim for breach of the implied covenant of good faith and fair dealing. Point denied.[7]

Judgment affirmed.

All concur.

---

**7.** In light of our disposition of Appellant's Points III and VII, we need not address his five remaining points on appeal. Appellants raised the following additional points: (I) the trial court erred in sustaining Respondent's motion for summary judgment in regards to Respondent's assertion that the relationship between student and university is not contractual in nature; (II) the trial court erred in sustaining Respondent's motion for summary judgment in regards to Respondent's assertion that Appellant improperly incorporated written documents and their contents; (IV) the trial court erred in sustaining Respondent's motion for summary judgment in re-

gards to Respondent's assertion that Appellant does not have standing to sue for any breach of the university's Collected Rules and Regulations; (V) the trial court erred in sustaining Respondent's motion for summary judgment in regards to Respondent's assertion that Respondent cannot be held liable for a breach of contract since Appellant allegedly failed to show how Respondent specifically breached the contract and sustained damages; and (VI) the trial court erred in sustaining Respondent's motion for summary judgment in regards to Respondent's assertion that Appellant's case is one of educational malpractice.